# APRIL TERM, 1906.

LADENSACK v. JOHNSON.

1. CANCELLATION OF INSTRUMENTS — UNDUE INFLUENCE — INADE-
QUATE CONSIDERATION.

On a bill to set aside certain conveyances on the ground that
they were obtained for an inadequate consideration by the
exercise of an undue influence, evidence considered, and
*held*, to sustain a decree for complainant.

2. SAME—FRAUD.

Evidence as to another conveyance, *held* insufficient to so con-
nect the grantee therein with the fraudulent conduct of her
husband as to support a decree for complainant.

3. APPEAL AND ERROR — CHANCERY APPEAL — OBJECTION NOT
RAISED BELOW.

An objection that an administrator cannot join with heirs in a
bill to set aside a conveyance made by decedent, without a
showing that the land is needed to pay debts, will not be con-
sidered on appeal where the question was not raised below
and there is no reason why a decree cannot be entered that
will do justice to all parties.

Appeal from Wayne; Brooke, J. •Submitted January
4, 1906. (Docket No. 6.) Decided April 3, 1906.

Bill by Philip Ladensack and William M. Mertz, ad-
ministrator with the will annexed of the estate of Carl J.
Ladensack, deceased, against Thomas H. Johnson, Eliza-
beth Johnson, Charles Ladensack, and others, to set aside
certain deeds. From a decree for complainants, defend-
ants Johnson appeal. Modified.

*Dalton, Mertz & Renaud,* for complainants.

*William C. Manchester* and *George H. Prentis,* for defendants Johnson.

*Crane & Crane,* for defendants Ladensack.

MONTGOMERY, J. The following statement is taken from the opinion of Judge Brooke, who heard the case be-low:

" The bill of complaint in this cause is filed by Philip Ladensack and William M. Mertz, administrator with the will annexed of the estate of Carl J. Ladensack, as complainants, against Thomas H. Johnson, Elizabeth Johnson, Mary Edem, and John Edem, all of Detroit, and Charles Ladensack, Margaret Ladensack, and Lizzie Ladensack, all of the city of Saginaw. The complainant Philip Ladensack is a son of Carl J. Ladensack, deceased. The defendants Elizabeth Johnson and Mary Edem are daughters of the said Carl J. Ladensack, and the defendants Charles Ladensack, Margaret Ladensack, and Lizzie Ladensack are infant children of Frank Ladensack, who was in his lifetime a son of the said Carl J. Ladensack. The bill is filed for the purpose of setting aside certain conveyances from Carl J. Ladensack and his wife, made in their lifetime, to Elizabeth Johnson and Thomas H. Johnson, and to set aside a deed from said Thomas H. Johnson and Elizabeth Johnson to Mary Edem and John Edem, and to reach certain funds which it is complained by the complainants are in the hands of the defendant Thomas H. Johnson, belonging to the estate of Carl J. Ladensack, deceased.

" Up to the year 1887, the deceased, Carl J. Ladensack, had lived upon a small farm in the vicinity of Detroit. In the fall of that year he sold his said farm for an express consideration of $5,555. * * * At that time he was possessed of a house and lot on St. Joseph street in the city of Detroit, and at or about that time he expended in improvements upon said lot the sum of $1,600. He, likewise, in the fall of 1887, purchased a lot on Ash street adjoining the residence of his daughter Elizabeth Johnson, for the sum of $900, and erected thereon a house at an expense of about $1,000. * * * An examination of his bank account in the People's Savings Bank, covering the years 1886 and 1887, shows that he had several hundred

dollars on deposit in that bank prior to the sale of his farm. Assuming that he had no money except the proceeds from the sale of his farm, it will be seen that, after deducting the two sums of $1,600 paid for repairs on the St. Joseph street house and the sum of $1,900 paid for the house and lot on Ash street, he had remaining $2,055 in cash at the time he took up his residence upon Ash street next door to his daughter Elizabeth Johnson. He sold the house on St. Joseph street to his daughter Mary Edem and her husband for the sum of $2,000, the full consideration of which was paid. Christina Ladensack, the wife of his son Frank, paid to him the sum of $1,000 at the time she sold the 32 acres which her husband had owned during his lifetime. These two sums, together with the $2,055 already mentioned, would amount to $5,055. The old gentleman was at the time possessed likewise of a 20-acre plot of ground not far from Detroit, worth somewhere from $1,300 to $2,000. At the time he took up his residence in the city of Detroit in 1888, he was 71 or 72 years of age. He died February 9, 1902, at the age of 85; his wife having died some three or four months previous. During the last three months of his life he lived with his daughter Elizabeth Johnson. At his death it was found that he left no estate. A conveyance from himself and wife to Elizabeth Johnson, his daughter, of the house and lot on Ash street, had been made some time during the year 1900, and a further conveyance of the 20-acre lot had been made from himself and wife to Thomas H. Johnson for an expressed consideration of $1,600 some time in the year 1901.

"Upon the appointment of the administrator, no assets were discovered, except two promissory notes from Thomas H. Johnson to Carl J. Ladensack; one for $1,500, dated July 24, 1897, and one for $400, dated May 24, 1899. These two notes, after the death of Carl J. Ladensack, were found to be in the possession of John and Mary Edem, and were claimed by Mary Edem as her own property. The administrator of the estate, although at one time in possession of these two notes as administrator, reached the conclusion that they were in fact the property of Mary Edem and turned them over to her. * * * Suit was commenced to recover the interest upon the notes by the Edems against Johnson, and those suits were pending in this court when Mary Edem and her husband, John, entered into an agreement with the defend-

ant Johnson, whereby Johnson agreed to and did pay to them the sum of $250 and conveyed to them the 20 acres, the deed of which he had received from Carl J. Ladensack for an expressed consideration of $1,600, no part of which except $1 had been paid by him for the same. It appears that, prior to the settlement last mentioned between the Edems and the defendant Johnsons, the Edems had been acting in concert with Philip Ladensack, the brother of Mrs. Edem, in an effort to recover from the Johnsons the estate of Carl J. Ladensack. After said settlement was made this bill was filed, and Mary and John Edem became parties defendant, instead of parties complainant, as had been originally contemplated.

"After his appointment as administrator the complainant Mertz demanded of the Johnsons the books, papers, and effects of Carl J. Ladensack, deceased, and among the same were turned over to him three account books, all conceded to be in the handwriting of the deceased. From an examination of these books it is apparent that the deceased, Carl J. Ladensack, was a man of considerable education and exceedingly careful in the method of his bookkeeping. The account books ran back to 1850 or thereabouts, and contained careful memoranda of all financial transactions. The one current at the time of his death commenced in the year 1882, and contained careful statements of account practically up to the time of his death, and with one notable exception. Pages 61 to 76, inclusive, are missing from this book. The last entry on page 60 is under date of October, 1887, and the first entry on page 77 is under date of April, 1896; so that the history of the financial dealings of the deceased between the years 1887 and 1896 is wholly lacking. The leaves upon which the transactions were evidently recorded have been cut from the book with a scissors, and are missing, and are conceded to have been absent from the book at the time the same was turned over to Mertz, the administrator.

"At the time the deceased went to live on Ash street beside the defendant Johnson, Johnson was engaged in a small way in the manufacture and sale of horseradish and other grocery sundries. It appears from the testimony that from that time the business of Johnson was rapidly and considerably enlarged, and it likewise appears from the admissions of the defendant Johnson that, between the year 1887 and the year 1894, he bought and paid for real estate to the amount of upwards of $8,000.

" It is claimed by the complainants that the two notes above referred to should be decreed to belong to the estate of Carl J. Ladensack, deceased; that the conveyances covering the 20-acre lot and the house on Ash street should be set aside, and that those two pieces of property should be decreed to belong to the estate of the deceased; and that the defendant Thomas H. Johnson should be compelled to account to the estate for the profits of his business since the year 1888, at which time it is claimed that he secured from the deceased money with which to prosecute it.    It is claimed by the complainants that the deceased, who was some 83 or 84 years old at the time of the execution of the deeds in question, was mentally incompetent to understand the meaning and purpose of his acts, and was wholly under the influence of the defendants Thomas and Elizabeth Johnson.

"The defendant Thomas H. Johnson claims that, at the time of the death of the deceased, he owed the two notes amounting to $1,900 to Carl J. Ladensack, and no other or further sum. His wife, Elizabeth Johnson, claims that the conveyance to her of the house and lot on Ash street was without consideration, but, as expressed by her father, for the purpose of putting her in possession of her share of his estate.    It is admitted by the defendant Thomas H. Johnson that no money was paid for the conveyance to him of the 20 acres, although the consideration expressed was $1,600; but he avers that at the time he agreed with the old gentleman that he would furnish him with whatever money was necessary during his lifetime.

" It is obvious, however, that inasmuch as the deceased was at the time some 84 years of age, and the defendant Johnson already owed him, according to his own testimony, $1,900, that there could be small chance of his ever being called upon to pay any part of the expressed consideration under this agreement.    Johnson likewise testified that, some time after the execution of the deed to him of the 20 acres, the deceased told him that, if he sold the 20 acres within five years, he should pay from the sum received $500 to Philip Ladensack, and $500 to Mary Edem. He, however, says that he did not agree with his father-in-law to make these payments, and claims the absolute title to the 20 acres, and that he had the right to convey the same to John and Mary Edem in order to redeem the notes held by them against him."

The circuit judge decreed that Mary Edem was entitled to retain the two notes of $400 and $1,500, respectively, and also decreed that both the deed to Thomas H. Johnson and that to Elizabeth Johnson should be set aside. The defendants Johnson appeal.

That the conveyance to Thomas H. Johnson was made upon a wholly inadequate consideration, and when he had a large influence over the deceased, is apparent from the most casual examination of the record. It is also significant that the consideration named in the deed was $1,600, and not that which defendant Johnson now asserts to have been the real consideration. It also appears by Johnson's own testimony that deceased, after the deed was made, made certain requests as to the disposition of the proceeds of the land conveyed, to which he (Johnson) made no reply, thinking, as he said, that this was a strange way to do business. We are convinced that the deceased never intended this conveyance as an absolute gift, and agree with the circuit judge that it should be set aside.

As to the conveyance to Elizabeth Johnson the case is not so clear. Standing by itself, this transaction is very similar to that of the transfer of the notes to Mrs. Edem in an effort to equalize the estate. The transfer was made before the gift to Mrs. Edem, and seems to have been the inducing cause for that gift. At least, the fact that this transfer had been made to Elizabeth was made use of by the Edems as furnishing a reason why something should be given to Mary. There seems to have been the same reason for each gift. The circuit judge appears to have reached the conclusion that the deed to Elizabeth should be set aside by concluding that the Johnsons had a considerable sum of money belonging to the deceased which was not accounted for. In any view, there is nothing which connects Mrs. Johnson with any fraud in this respect. More than this, a most careful examination of the record convinces us that, however wanting in candor Thomas H. Johnson may

have been, the evidence fairly shows that the two notes represented all that he owed to deceased at any time after 1900.   This conclusion is based, in part, upon the books of account kept by the deceased.   We have, as we think, given due weight to the fact that Johnson was not frank with the probate court, and have considered the charge that he mutilated the decedent's books; but the evidence, as a whole, is convincing that the indebtedness was in fact truly represented by the two notes.

It is contended by defendants' counsel that the bill cannot be maintained because there was a misjoinder of complainants.   It is said that the administrator could not file the bill to set aside the transfer of real estate, except upon a showing that there are creditors of the estate who cannot be paid out of the personalty, and that Philip Ladensack, as heir, cannot maintain a bill to reach personal property. There is nothing standing in the way of a decree which shall do justice to all the parties.   No demurrer was interposed by the defendants, nor can we discover that this point was made in the court below.   Under these circumstances, the court will not dismiss the proceeding for such a fault, if there be one, but will proceed to enter a proper decree.   *Reed* v. *Wessel*, 7 Mich. 139.

The decree of the circuit court will be modified as above indicated.   The deed to Thomas H. Johnson will be set aside, but the deed to Elizabeth Johnson will stand. Elizabeth Johnson will recover the costs of her appeal, to be paid out of the estate.   No costs will be awarded for or against her for proceedings in the court below, but complainants will recover their costs in the court below against Thomas H. Johnson.

BLAIR, OSTRANDER, HOOKER, and MOORE, JJ., concurred.