STEIGER, Respondent, v. NOWAKOWSKI and wife, Appellants.

*No. 250. Argued March 3, 1975.—Decided March 28, 1975.*
(Also reported in 227 N. W. 2d 104.)

For the appellants there was a brief by *Hugh R. Braun* and *Godfrey & Trump,* all of Milwaukee, and oral argument by *Mr. Braun.*

For the respondent there was a brief by *Denny & Yanisch,* attorneys, and *Richard F. Yanisch* of counsel,

all of Milwaukee, and oral argument by *Richard F. Yanisch.*

ROBERT W. HANSEN, J. "Something there is that doesn't love a wall," the poet wrote. The plaintiff here would not be among those who feel that way about walls. For she built a retaining wall along the lot line, separating her somewhat elevated homesite from that of her neighbors, the defendants. They seem to have had or developed an antipathy to walls, and especially to the two-foot retaining wall, visible to them but not to their neighbor who built it. So the husband dug a ditch alongside the wall. Then he plugged the ends with stones, and diverted rainwater into his ditch. The ditch-and-water combination eroded the soil beneath the wall, and it partially collapsed. The plaintiff sued for damages for the cost of rebuilding the wall, and her right to such damages is at issue in this appeal.

*Basis of liability.*

The trial court made this specific finding of fact: "That the defendants did intentionally, and for no useful purpose, dig the subject ditch, plug its ends, and direct water through their rain downspout into the ditch for the sole purpose of softening the foundation under plaintiff's retaining wall in order to collapse the same." That finding of fact is supported by the evidence, and is affirmed. The trial court concluded that the ditch and water constituted what is termed in the law a "private nuisance." [1] The trial court based its award of damages on such nontrespassory invasion of another's interest in

[1] *Abdella v. Smith* (1967), 34 Wis. 2d 393, 398, 149 N. W. 2d 537, this court holding: "This court has defined a private nuisance as 'an unreasonable interference with the interests of an individual in the use or enjoyment of land.'" (Citing *Hoene v. Milwaukee* (1962), 17 Wis. 2d 209, 214, 116 N. W. 2d 112.)

the private use and enjoyment of land, finding such invasion here to be intentional, unreasonable and for no useful purpose. As to the basis of liability, we would go further to hold the ditch and water here to constitute what is known in the law as a "trespass." Under the law of trespass, entry upon another's land need not be in person, but may be made ". . . by causing or permitting a thing to cross the boundary of the premises." [2] Trespass may be committed upon the vertical, as well as the horizontal surface of another's premises.[3] The interest of a landowner in exclusive possession extends above and below the surface of the property.[4] Thus, trespass may be committed by explosions or blasting operations.[5] In the case before us, the defendants did not use dynamite to bring down the wall, but the ditch and water accomplished an identical result. The ditch-directed rainwater, the expert witnesses testified, eroded the soil underneath the wall, causing it to topple. There is here the intended entry of something tangible, with appreciable mass, not visible to the eye solely because it was forcing its entry underground, and causing substantial damage. That it was $H_2O$ instead of TNT does not change the situation or alter our conclusion that there was here an intended act of physical trespass, intended and causing substantial damage.

*Restriction in deed.*

When the plaintiff purchased her homesite from the defendants, there was in the deed a restriction as to walls, reading: "No building, fence, wall or other structure shall be erected, built or maintained upon any such

[2] 87 C. J. S., *Trespass*, p. 966, sec. 13c.

[3] 75 Am. Jur. 2d, *Trespass*, p. 16, sec. 11.

[4] Prosser, *Law of Torts* (hornbook series, 4th ed.), Intentional Interference with Property, p. 69, sec. 13.

[5] 87 C. J. S., *supra*, footnote 2, p. 967, sec. 13.

lot, nor shall any change or alteration for which it is necessary to secure a permit from the proper authorities be made therein . . . ." The trial court concluded that it was not the intent of this covenant in the deed restriction as to walls ". . . to contemplate a bar to the construction of a ground level retaining wall. . . ." The juxtaposition of "fence" and "wall" in the covenant would suggest a reference only to above-surface fences or walls that block or limit on-surface ingress and egress. Additionally, there is uncontradicted testimony here that a building permit was not required or necessary for construction of a retaining wall if, as here, the top of the wall was not higher than the ground it was supporting. Even if a building permit were here required and not procured, with an act of unlawful trespass established, it is clear that the defendants acceded to no right to dynamite or water-weaken the soil on which the retaining wall stood.

*Issues as to damages.*

In addition to granting injunctive relief, the trial court awarded the following items of damages: (1) $390 as reimbursement for reconstruction of the east end of the wall; (2) $150 as reimbursement for costs of materials used in reconstruction of east end of the wall; (3) $50 as reimbursement for cost of shoring up west end of wall; (4) $670 for reconstruction of entire wall; (5) $130 for additional costs if workers are denied access to defendants' property; and (6) $300 as punitive damages. Several allegations of error are raised by defendants as to these awards.

As to the $390 reimbursement for reconstruction of the east end of the wall, the bill of the contractors was objected to by defendants' counsel who stated he wanted to question the contractors as to work done. The objection was sustained. At the end of the trial, the trial court admitted the bills paid, over objection, telling defendants'

attorney that he could have subpoenaed the contractors if he wanted to question them as to work done. That put the burden of establishing work done and reasonableness of the bill on the wrong shoulders. However, with other testimony establishing the reasonableness of the expense involved, we find no reversible error.

As to $150 reimbursement for costs of materials and $50 for shoring, these items were not requested in plaintiff's complaint and constitute variances between pleading and proof. By statute, such variances are not to be deemed material unless they mislead the adverse party to his prejudice.[6] Where the adverse party is so misled, the court may order the pleading amended upon such terms as may be just.[7] Additionally, where the proofs were received without objection, a variance between the allegations of the complaint and the evidence is not to be deemed material.[8] In the absence of such objection here, the variances were not material and the trial court did not err in this allowance for damage sustained.

As to $670 for reconstruction of the entire wall, the damage award is challenged on the ground that only the cost of rebuilding the collapsed portion should be awarded. The only testimony as to these alternatives is by a landscape architect who testified that it would be best to reconstruct the entire wall for two reasons: (1) "aesthetic considerations;" and (2) if not rebuilt on plaintiff's property, the portion of the wall still standing, due to the ditch and water, would be encroaching on defendants' property. With the defendants the principal viewers of the wall, we would not give great weight to the matter of aesthetics. However, the second reason

[6] Sec. 263.28, Stats. *See also: Zelof v. Capital City Transfer, Inc.* (1966), 29 Wis. 2d 384, 391, 139 N. W. 2d 1; *Lisowski v. Chenenoff* (1968), 37 Wis. 2d 610, 630, 631, 155 N. W. 2d 619.

[7] *Lake Geneva v. States Improvement Co.* (1969), 45 Wis. 2d 50, 57, 172 N. W. 2d 176.

[8] *Id.* at page 58.

given amply supports the trial court finding that the entire wall needed reconstruction. Such finding of a trial court is not to be upset ". . . if the 'judicial mind could on due consideration of the evidence as a whole' reasonably come to the conclusion of the trial court." [9]

As to $300 awarded as punitive damages, the challenge rests on the denial by the court of a pretrial motion by plaintiff to amend her complaint to include a prayer for punitive damages. The trial judge to whom the case was then assigned, the Honorable ELMER ROLLER, granted plaintiff's motion to file an amended complaint but specifically refused her motion to include in such amended complaint a prayer for punitive damages. Such trial court refusal to permit including a request for punitive damages was ". . . without prejudice to the right of the Plaintiff to reinstate this petition at trial." No such reinstatement was sought, either at the beginning of the trial or at any other time. The plaintiff was given the right to renew her request for punitive damages at the time of trial. This she did not do, and defendants were entitled to rely upon the nonrenewal of the motion as indicating that the plaintiff did not seek and, with the complaint not amended, would not secure punitive damages. This goes beyond variance between an allegation in a pleading and the proof to a failure to exercise an option given in the trial court denying amendment of the complaint to include a request for punitive damages. The judgment of the trial court is modified by striking from it the award of $300 punitive damages to the plaintiff.

*By the Court.*—Judgment modified and, as modified, affirmed.

[9] *State ex rel. Schlehlein v. Duris* (1972), 54 Wis. 2d 34, 40, 194 N. W. 2d 613. (Quoting *State ex rel. Isham v. Mullally* (1961), 15 Wis. 2d 249, 255, 112 N. W. 2d 701.) *See also: State ex rel. Brajdic v. Seber* (1972), 53 Wis. 2d 446, 193 N. W. 2d 43.