Glenn PRAH, Plaintiff-Appellant,

v.

Richard D. MARETTI, Defendant-Respondent.

Supreme Court

*No. 81–193. Argued March 29, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 182.)

For the plaintiff-appellant there were briefs by *John F. Maloney, Jonathan A. Mulligan* and *Mulcahy & Wherry, S.C.,* of Milwaukee, and oral argument by *Mr. Maloney.*

For the defendant-respondent there were briefs and oral argument by *Jack C. Horth* of Milwaukee.

Amicus curiae brief was filed by *Craig Gordon Smith* of Milwaukee, and *Alan S. Miller* of Washington, D.C., for Natural Resources Defense Council.

Amicus curiae brief was filed by *Anthony C. Liotta,* acting assistant attorney general, Land and Natural Resources Division; *Joan F. Kessler* of Milwaukee, United States attorney, eastern district of Wisconsin; *Kathryn A. Oberly,* chief, energy section; *J. Vance Hughes,* chief, special litigation section; *Jacques B. Gelin* and *James P. Leape,* attorneys, United States department of justice, Washington, D.C.

SHIRLEY S. ABRAHAMSON, J. This appeal from a judgment of the circuit court for Waukesha county, Max Raskin, circuit judge, was certified to this court by the court of appeals, sec. (Rule) 809.61, Stats. 1979–80, as presenting an issue of first impression, namely, whether an owner of a solar-heated residence states a claim upon which relief can be granted when he asserts that his neighbor's proposed construction of a residence (which conforms to existing deed restrictions and local ordinances) interferes with his access to an unobstructed path for sunlight across the neighbor's property. This case thus involves a conflict between one landowner (Glenn Prah, the plaintiff) interested in unobstructed access to sunlight across adjoining property as a natural source of energy and an adjoining landowner (Richard D. Mar-

etti, the defendant) interested in the development of his land.

The circuit court concluded that the plaintiff presented no claim upon which relief could be granted and granted summary judgment for the defendant. We reverse the judgment of the circuit court and remand the cause to the circuit court for further proceedings.

## I.

According to the complaint, the plaintiff is the owner of a residence which was constructed during the years 1978–1979. The complaint alleges that the residence has a solar system which includes collectors on the roof to supply energy for heat and hot water and that after the plaintiff built his solar-heated house, the defendant purchased the lot adjacent to and immediately to the south of the plaintiff's lot and commenced planning construction of a home. The complaint further states that when the plaintiff learned of defendant's plans to build the house he advised the defendant that if the house were built at the proposed location, defendant's house would substantially and adversely affect the integrity of plaintiff's solar system and could cause plaintiff other damage. Nevertheless, the defendant began construction. The complaint further alleges that the plaintiff is entitled to "unrestricted use of the sun and its solar power" and demands judgment for injunctive relief and damages.[1]

---

[1] As part of his amended answer to the complaint the defendant asserts that "the plaintiff's complaint fails to state a claim or cause of action against the defendant upon which relief can be granted and that the plaintiff is without legal or equitable rights with respect to his claim that he is entitled to the unrestricted use of the sun and its solar power and that the plaintiff's action is frivolous and without merit."

After filing his complaint, the plaintiff moved for a temporary injunction to restrain and enjoin construction by the defendant. In ruling on that motion the circuit court heard testimony, received affidavits and viewed the site.

The record made on the motion reveals the following additional facts: Plaintiff's home was the first residence built in the subdivision, and although plaintiff did not build his house in the center of the lot it was built in accordance with applicable restrictions. Plaintiff advised defendant that if the defendant's home were built at the proposed site it would cause a shadowing effect on the solar collectors which would reduce the efficiency of the system and possibly damage the system. To avoid these adverse effects, plaintiff requested defendant to locate his home an additional several feet away from the plaintiff's lot line, the exact number being disputed. Plaintiff and defendant failed to reach an agreement on the location of defendant's home before defendant started construction. The Architectural Control Committee of the subdivision and the Planning Commission of the City of Muskego approved the defendant's plans for his home, including its location on the lot. After such approval, the defendant apparently changed the grade of the property without prior notice to the Architectural Control Committee.[2] The problem with defendant's proposed

For a discussion of protecting solar access, see Note, *Obtaining Access to Solar Energy: Nuisance, Water Rights, and Zoning Administration*, 45 Bkyn. L. Rev. 357 (1979); Comment, *Obstruction of Sunlight as a Private Nuisance*, 65 Cal. L. Rev. 94 (1977); Comment, *Solar Rights: Guaranteeing a Place in the Sun*, 57 Ore. L. Rev. 94 (1977); Note, *The Allocation of Sunlight; Solar Rights and the Prior Appropriation Doctrine*, 47 U. Colo. L. Rev. 421 (1976).

[2] There appears to be some dispute over the facts that immediately preceded the initiation of construction concerning the granting of building permits, approval of the Architecture Control Committee and subsequent initiation of construction at a grade

construction, as far as the plaintiff's interests are concerned, arises from a combination of the grade and the distance of defendant's home from the defendant's lot line.

The circuit court denied plaintiff's motion for injunctive relief, declared it would entertain a motion for summary judgment and thereafter entered judgment in favor of the defendant.

## II.

The defendant argues that because the circuit court conducted a hearing and considered all material issues of fact, we should consider this case an appeal from a judgment after trial, not as an appeal from a summary judgment. We do not accept the defendant's characterization of the circuit court's proceedings.

The circuit court held a hearing to consider plaintiff's motion for a temporary injunction. A primary consideration on such motion is whether the moving party has a reasonable probability of ultimate success; the ruling on the motion does not resolve the issue of whether the moving party will in fact ultimately succeed in the lawsuit. *Werner v. Grootemaat*, 80 Wis. 2d 513, 520, 259 N.W.2d 310 (1977). The circuit court denied the motion for a temporary injunction, concluding that there was no reasonable probability that the plaintiff would ultimately succeed and that the plaintiff had not stated a claim upon which relief could be granted. The circuit court ended its memorandum decision on the motion for a temporary injunction with the following comment:

level not approved by the Committee. The specific dispute over this sequence of events is not relevant to this appeal, but suffice it to say that such facts will become relevant to the question of the reasonableness of the defendant's construction in light of our decision that the plaintiff has stated a claim on the issue of private nuisance.

"In as much as the court is of the opinion that the plaintiff has failed to state a claim upon which equitable relief can be granted, and the parties having joined issue, the court will entertain a motion by the defendant for summary judgment."

This statement clearly indicates the intention and expectation of the circuit court to deal with this case on a motion for summary judgment. We therefore consider this as an appeal from a judgment entered on a motion for summary judgment.

In deciding a motion for summary judgment the initial question is the same as that on a sec. 802.06(2), Stats. 1979–80, motion to dismiss the complaint for failure to state a claim upon which relief can be granted, namely, whether the complaint states a claim upon which relief can be granted. *Kanack v. Kremski,* 96 Wis. 2d 426, 435, 291 N.W.2d 864 (1980) (Abrahamson, J., concurring). If the complaint states a claim and the pleadings show the existence of factual issues, the court then examines the affidavits and other proof and determines whether there are disputed material facts that entitle the non-moving party to a trial. On summary judgment the court does not decide those issues of fact; it merely decides whether genuine issues of fact exist. *Coleman v. Outboard Marine Corp.,* 92 Wis. 2d 565, 570–71, 285 N.W.2d 631 (1979).

In this case there is some ambiguity whether the judgment was based on the complaint or on factual matters outside the pleadings which were presented to the circuit court in connection with the motion for a temporary injunction. Consequently, we shall first test the sufficiency of the complaint and then determine whether the matters outside the pleadings present disputed material facts sufficient to justify a trial.

## III.

In testing the sufficiency of the complaint the facts pleaded by the plaintiff, and all reasonable inferences therefrom, are accepted as true. *Hartridge v. State Farm Mutual Auto Ins. Co.*, 86 Wis. 2d 1, 4–5, 271 N.W.2d 598 (1978). The pleadings are to be liberally construed with a view to substantial justice to the parties, sec. 802.02 (6), Stats. 1979–80, and the complaint should be dismissed as legally insufficient only if "it is quite clear that under no circumstances can the plaintiff recover." Clausen & Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801–803*, 59 Marq. L. Rev 1, 54 (1976), quoted with approval in *Morgan v. Pennsylvania General Ins. Co.*, 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979).

The plaintiff presents three legal theories to support his claim that the defendant's continued construction of a home justifies granting him relief: (1) the construction constitutes a common law private nuisance; (2) the construction is prohibited by sec. 844.01, Stats. 1979–80;[3]

---

[3] Sec. 844.01, Stats. 1979–80, provides:

"(1) Any person owning or claiming an interest in real property may bring an action claiming physical injury to, or interference with, the property or his interest therein; the action may be to redress past injury, to restrain further injury, to abate the source of injury, or for other appropriate relief.

"(2) Physical injury includes unprivileged intrusions and encroachments; the injury may be surface, subsurface or suprasurface; the injury may arise from activities on the plaintiff's property, or from activities outside the plaintiff's property which affect plaintiff's property.

"(3) Interference with an interest is any activity other than physical injury which lessens the possibility of use or enjoyment of the interest.

"(4) The lessening of a security interest without physical injury is not actionable unless such lessening constitutes waste."

We can find no reported cases in which sec. 844.01 has been interpreted and applied, and the parties do not cite any.

and (3) the construction interferes with the solar easement plaintiff acquired under the doctrine of prior appropriation.[4]

As to the claim of private nuisance the circuit court concluded that the law of private nuisance requires the court to make "a comparative evaluation of the conflicting interests and to weigh the gravity of the harm to the plaintiff against the utility of the defendant's conduct." The circuit court concluded: "A comparative evaluation of the conflicting interests, keeping in mind the omissions and commissions of both Prah and Maretti, indicates that defendant's conduct does not cause the gravity of the harm which the plaintiff himself may well have avoided by proper planning." The circuit court also concluded that sec. 844.01 does not apply to a home constructed in accordance with deed and municipal ordinance requirements. Further, the circuit court rejected the prior appropriation doctrine as "an intrusion of judicial egoism over legislative passivity."

We consider first whether the complaint states a claim for relief based on common law private nuisance. This state has long recognized that an owner of land does not have an absolute or unlimited right to use the land in a way which injures the rights of others. The rights of neighboring landowners are relative; the uses by one must not unreasonably impair the uses or enjoyment of the other.[5] VI-A *American Law of Property* sec. 28.22,

---

[4] Under the doctrine of prior appropriation the first user to appropriate the resource has the right of continued use to the exclusion of others.

The doctrine of prior appropriation has been used by several western states to allocate water, *Paug Vik v. Wards Cove*, 633 P.2d 1015 (Alaska 1981), and by the New Mexico legislature to allocate solar access, secs. 47–3–1 to 47–3–5, N.M. Stats. 1978. See also Note, *The Allocation of Sunlight: Solar Rights and the Prior Appropriation Doctrine*, 47 Colo. L. Rev. 421 (1976).

[5] In *Abdella v. Smith*, 34 Wis. 2d 393, 399, 149 N.W.2d 537 (1967), this court quoted with approval Dean Prosser's descrip-

pp. 64–65 (1954). When one landowner's use of his or her property unreasonably interferes with another's enjoyment of his or her property, that use is said to be a private nuisance. *Hoene v. Milwaukee,* 17 Wis. 2d 209, 214, 116 N.W.2d 112 (1962) ; *Metzger v. Hochrein,* 107 Wis. 267, 269, 83 N.W. 308 (1900). See also Prosser, *Law of Torts* sec. 89, p. 591 (2d ed. 1971).

The private nuisance doctrine has traditionally been employed in this state to balance the conflicting rights of landowners,[6] and this court has recently adopted the analysis of private nuisance set forth in the Restatement (Second) of Torts. *CEW Mgmt. Corp. v. First Federal Savings & Loan Association,* 88 Wis. 2d 631, 633, 277 N.W.2d 766 (1979). The Restatement defines private nuisance as "a nontrespassory invasion of another's interest in the private use and enjoyment of land." Restate-

tion of the judicial balancing of the reciprocal rights and privileges of neighbors in the use of their land:

"Most of the litigation as to private nuisance has dealt with the conflicting interests of landowners and the question of the reasonableness of the defendant's conduct: The defendant's privilege of making a reasonable use of his own property for his own benefit and conducting his affairs in his own way is no less important than the plaintiff's right to use and enjoy his premises. The two are correlative and interdependent, and neither is entitled to prevail entirely, at the expense of the other. Some balance must be struck between the two. The plaintiff must be expected to endure some inconvenience rather than curtail the defendant's freedom of action, and the defendant must so use his own property that he causes no unreasonable harm to the plaintiff. The law of private nuisance is very largely a series of adjustments to limit the reciprocal rights and privileges of both. In every case the court must make a comparative evaluation of the conflicting interests according to objective legal standards, and the gravity of the harm to the plaintiff must be weighed against the utility of the defendant's conduct." Prosser, *Law of Torts,* sec. 89, p. 596 (2d ed. 1971) (Citations omitted).

[6] See, *e.g., Hunter v. McDonald,* 78 Wis. 2d 338, 254 N.W.2d 282 (1977) ; *Abdella v. Smith, supra.*

ment (Second) of Torts Sec. 821D (1977). The phrase "interest in the private use and enjoyment of land" as used in sec. 821D is broadly defined to include any disturbance of the enjoyment of property. The comment in the Restatement describes the landowner's interest protected by private nuisance law as follows:

"The phrase 'interest in the use and enjoyment of land' is used in this Restatement in a broad sense. It comprehends not only the interests that a person may have in the actual present use of land for residential, agricultural, commercial, industrial and other purposes, but also his interests in having the present use value of the land unimpaired by changes in its physical condition. Thus the destruction of trees on vacant land is as much an invasion of the owner's interest in its use and enjoyment as is the destruction of crops or flowers that he is growing on the land for his present use. 'Interest in use and enjoyment' also comprehends the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land. Freedom from discomfort and annoyance while using land is often as important to a person as freedom from physical interruption with his use or freedom from detrimental change in the physical condition of the land itself." Restatement (Second) of Torts, Sec. 821D, Comment *b*, p. 101 (1977).

Although the defendant's obstruction of the plaintiff's access to sunlight appears to fall within the Restatement's broad concept of a private nuisance as a nontrespassory invasion of another's interest in the private use and enjoyment of land, the defendant asserts that he has a right to develop his property in compliance with statutes, ordinances and private covenants without regard to the effect of such development upon the plaintiff's access to sunlight. In essence, the defendant is asking this court to hold that the private nuisance doctrine is not applicable in the instant case and that his right to develop his land is a right which is *per se* superior to his neighbor's interest in access to sunlight.

This position is expressed in the maxim "cujus est solum, ejus est usque ad coelum et ad infernos," that is, the owner of land owns up to the sky and down to the center of the earth. The rights of the surface owner are, however, not unlimited. *U.S. v. Causby*, 328 U.S. 256, 260–1 (1946). See also 114.03, Stats. 1979–80.

The defendant is not completely correct in asserting that the common law did not protect a landowner's access to sunlight across adjoining property. At English common law a landowner could acquire a right to receive sunlight across adjoining land by both express agreement and under the judge-made doctrine of "ancient lights." Under the doctrine of ancient lights if the landowner had received sunlight across adjoining property for a specified period of time,[7] the landowner was entitled to continue to receive unobstructed access to sunlight across the adjoining property. Under the doctrine the landowner acquired a negative prescriptive easement and could prevent the adjoining landowner from obstructing access to light.[8]

Although American courts have not been as receptive to protecting a landowner's access to sunlight as the English courts, American courts have afforded some protection to a landowner's interest in access to sunlight. American courts honor express easements to sunlight. American courts initially enforced the English common law doctrine of ancient lights, but later every state which considered the doctrine repudiated it as incon-

[7] The specified time period of uninterrupted enjoyment required to create a right to receive light across adjoining property varied in English legal history. Thomas, Miller & Robbins, *Overcoming Legal Uncertainties About Use of Solar Energy Systems* 23 (Am. Bar Foundation 1978).

[8] Pfeiffer, *Ancient Lights: Legal Protection of Access to Solar Energy*, 68 ABAJ 288 (1982). No American common law state recognizes a landowner's right to acquire an easement of light by prescription. Comment, *Solar Lights: Guaranteeing a Place in the Sun*, 57 Ore. L. Rev. 94, 112 (1977).

sistent with the needs of a developing country. Indeed, for just that reason this court concluded that an easement to light and air over adjacent property could not be created or acquired by prescription and has been unwilling to recognize such an easement by implication. *Depner v. United States National Bank,* 202 Wis. 405, 408, 232 N.W. 851 (1930) ; *Miller v. Hoeschler,* 126 Wis. 263, 268–69, 105 N.W. 790 (1905).

Many jurisdictions in this country have protected a landowner from malicious obstruction of access to light (the spite fence cases) under the common law private nuisance doctrine.[9] If an activity is motivated by malice it lacks utility and the harm it causes others outweighs any social values. VI–A Law of Property sec. 28.28, p. 79 (1954). This court was reluctant to protect a landowner's interest in sunlight even against a spite fence, only to be overruled by the legislature. Shortly after this court upheld a landowner's right to erect a useless and unsightly sixteen-foot spite fence four feet from his neighbor's windows, *Metzger v. Hochrain,* 107 N.W. 267, 83 N.W. 308 (1900), the legislature enacted a law specifically defining a spite fence as an actionable private nuisance.[10] Thus a landowner's interest in sunlight has been pro-

[9] In several of the spite fence cases, courts have recognized the property owner's interest in sunlight. *Hornsby v. Smith,* 191 Ga. 491, 500, 13 S.E.2d 20 (1941) ("the air and light no matter from which direction they come are God-given, and are essential to the life, comfort, and happiness of everyone") ; *Burke v. Smith,* 69 Mich. 380, 389, 37 N.W. 838 (1888) ("the right to breathe the air and enjoy the sunshine, is a natural one") ; *Barger v. Barringer,* 151 N.C. 433, 437, 66 S.E. 439 (1909) ("light and air are as much a necessity as water, and all are the common heritage of mankind").

[10] The legislature specifically overruled *Metzger,* ch. 81, Laws of 1903; sec. 280.08 Stats. 1925. *Cf. Steiger v. Nowakowski,* 67 Wis. 2d 355, 227 N.W.2d 104 (1975).

tected in this country by common law private nuisance law at least in the narrow context of the modern American rule invalidating spite fences. See, *e.g., Sundowner, Inc. v. King,* 95 Idaho 367, 509 P.2d 785 (1973); Restatement (Second) of Torts, sec. 829 (1977).

This court's reluctance in the nineteenth and early part of the twentieth century to provide broader protection for a landowner's access to sunlight was premised on three policy considerations. First, the right of landowners to use their property as they wished, as long as they did not cause physical damage to a neighbor, was jealously guarded. *Metzger v. Hochrein,* 107 Wis. 267, 272, 83 N.W. 308 (1900).

Second, sunlight was valued only for aesthetic enjoyment or as illumination. Since artificial light could be used for illumination, loss of sunlight was at most a personal annoyance which was given little, if any, weight by society.

Third, society had a significant interest in not restricting or impeding land development. *Dillman v. Hoffman,* 38 Wis. 559, 574 (1875). This court repeatedly emphasized that in the growth period of the nineteenth and early twentieth centuries change is to be expected and is essential to property and that recognition of a right to sunlight would hinder property development. The court expressed this concept as follows:

"As the city grows, large grounds appurtenant to residences must be cut up to supply more residences. . . . The cistern, the outhouse, the cesspool, and the private drain must disappear in deference to the public waterworks and sewer; the terrace and the garden, to the need for more complete occupancy. . . . Strict limitation [on the recognition of easements of light and air over adjacent premises is] in accord with the popular conception upon which real estate has been and is daily being conveyed in Wisconsin and to be essential to easy and rapid development at least of our municipalities." *Mil-*

ler v. Hoeschler, supra, 126 Wis. at 268, 270; quoted with approval in Depner, supra, 202 Wis. at 409.

Considering these three policies, this court concluded that in the absence of an express agreement granting access to sunlight, a landowner's obstruction of another's access to sunlight was not actionable. *Miller v. Hoeschler, supra,* 126 Wis. at 271; *Depner v. United States National Bank, supra,* 202 Wis. at 410. These three policies are no longer fully accepted or applicable. They reflect factual circumstances and social priorities that are now obsolete.

First, society has increasingly regulated the use of land by the landowner for the general welfare. *Euclid v. Ambler Realty Co.,* 272 U.S. 365 (1926); *Just v. Marinette,* 56 Wis. 2d 7, 201 N.W.2d 761 (1972).

Second, access to sunlight has taken on a new significance in recent years. In this case the plaintiff seeks to protect access to sunlight, not for aesthetic reasons or as a source of illumination but as a source of energy. Access to sunlight as an energy source is of significance both to the landowner who invests in solar collectors and to a society which has an interest in developing alternative sources of energy.[11]

---

[11] State and federal governments are encouraging the use of the sun as a significant source of energy. In this state the legislature has granted tax benefits to encourage the utilization of solar energy. See Ch. 349, 350, Laws of 1979. See also Ch. 354, Laws of 1981 (eff. May 7, 1982) enabling legislation providing for local ordinances guaranteeing access to sunlight.

The federal government has also recognized the importance of solar energy and currently encourages its utilization by means of tax benefits, direct subsidies and government loans for solar projects. Energy Tax Act of 1978, Nov. 9, 1978, P.L. 95–618, 92 Stat. 3174, relevant portion codified at 26 U.S.C.A. sec. 44(c) (1982 Supp.); Energy Security Act, June 30, 1980, P.L. 96–294, 94 Stat. 611, relevant portion codified at 12 U.S.C.A. sec. 3610 (1980); Small Business Energy Loan Act, July 4, 1978, P.L. 95–315, 92 Stat. 377, relevant portion codified within 15 U.S.C.A. secs. 631, 633, 636, and 639 (1982 Supp.); National Energy Con-

Third, the policy of favoring unhindered private development in an expanding economy is no longer in harmony with the realities of our society. *State v. Deetz,* 66 Wis. 2d 1, 224 N.W.2d 407 (1974). The need for easy and rapid development is not as great today as it once was, while our perception of the value of sunlight as a source of energy has increased significantly.

Courts should not implement obsolete policies that have lost their vigor over the course of the years. The law of private nuisance is better suited to resolve landowners' disputes about property development in the 1980's than is a rigid rule which does not recognize a landowner's interest in access to sunlight. As we said in *Ballstadt v. Pagel,* 202 Wis. 484, 489, 232 N.W. 862 (1930), "What is regarded in law as constituting a nuisance in modern times would no doubt have been tolerated without question in former times." We read *State v. Deetz,* 66 Wis. 2d 1, 224 N.W.2d 407 (1974), as an endorsement of the application of common law nuisance to situations involving the conflicting interests of landowners and as rejecting *per se* exclusions to the nuisance law reasonable use doctrine.

In *Deetz* the court abandoned the rigid common law common enemy rule with respect to surface water and adopted the private nuisance reasonable use rule, namely that the landowner is subject to liability if his or her interference with the flow of surface waters unreasonably invades a neighbor's interest in the use and enjoyment of land. Restatement (Second) of Torts, sec. 822, 826, 829 (1977). This court concluded that the common enemy rule which served society "well in the days of burgeoning national expansion of the mid-nineteenth and

servation Policy Act, Nov. 9, 1978, P.L. 95–619, 92 Stat. 3206, relevant portion codified at 42 U.S.C.A. secs. 1451, 1703–45 (1982 Supp.); Energy Conservation and Production Act, Aug. 14, 1976, P.L. 94–385, 90 Stat. 1125, relevant portion codified at 42 U.S.C.A. sec. 6881 (1977).

early-twentieth centuries" should be abandoned because it was no longer "in harmony with the realities of our society." *Deetz, supra,* 66 Wis. 2d at 14–15. We recognized in *Deetz* that common law rules adapt to changing social values and conditions.[12]

Yet the defendant would have us ignore the flexible private nuisance law as a means of resolving the dispute between the landowners in this case and would have us adopt an approach, already abandoned in *Deetz,* of favoring the unrestricted development of land and of applying a rigid and inflexible rule protecting his right to build on his land and disregarding any interest of the plaintiff in the use and enjoyment of his land. This we refuse to do.[13]

---

[12] This court has recognized "that the common law is susceptible of growth and adaptation to new circumstances and situations, and that courts have power to declare and effectuate what is the present rule in respect of a given subject without regard to the old rule. . . . The common law is not immutable, but flexible, and upon its own principles adapts itself to varying conditions." *Dimick v. Schiedt,* 293 U.S. 474, 487 (1935), quoted with approval in *Schwanke v. Garlt,* 219 Wis. 367, 371, 263 N.W. 176 (1935).

In *Bielski v. Schulze,* 16 Wis. 2d 1, 11, 114 N.W.2d 105 (1962), this court said: "Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of *stare decisis,* which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others 'long dead and unaware of the problems of the age in which he lives, do his thinking for him.' Mr. Justice Douglas, Stare Decisis, 49 Columbia Law Review (1949). 735, 736."

"The genius of the common law is its ability to adapt itself to the changing needs of society." *Moran v. Quality Aluminum Casting Co.,* 34 Wis. 2d 542, 551, 150 N.W.2d 137 (1967). See also *State v. Esser,* 16 Wis. 2d 567, 581, 115 N.W.2d 505 (1962).

[13] Defendant's position that a landowner's interest in access to sunlight across adjoining land is not "legally enforceable" and is therefore excluded *per se* from private nuisance law was adopted

Private nuisance law, the law traditionally used to adjudicate conflicts between private landowners, has the flexibility to protect both a landowner's right of access to sunlight and another landowner's right to develop land. Private nuisance law is better suited to regulate access to sunlight in modern society and is more in harmony with legislative policy and the prior decisions of this court than is an inflexible doctrine of non-recognition of any interest in access to sunlight across adjoining land.[14]

in *Fontainebleau Hotel Corp. v. Forty-five Twenty-five, Inc.*, 114 So. 2d 257 (Fla. Ct. App. 1959), *cert. den* 117 So. 2d 842 (Fla. 1960). The Florida district court of appeals permitted construction of a building which cast a shadow on a neighboring hotel's swimming pool. The court asserted that nuisance law protects only those interests "which [are] recognized and protected by law," and that there is no legally recognized or protected right to access to sunlight. A property owner does not, said the Florida court, in the absence of a contract or statute, acquire a presumptive or implied right to the free flow of light and air across adjoining land. The Florida court then concluded that a lawful structure which causes injury to another by cutting off light and air— whether or not erected partly for spite—does not give rise to a cause of action for damages or for an injunction. See also *People ex rel Hoogasian v. Sears, Roebuck & Co.*, 52 Ill 2d 301, 287 N.E. 2d 677 (1972).

We do not find the reasoning of *Fontainebleau* persuasive. The court leaped from rejecting an easement by prescription (the doctrine of ancient lights) and an easement by implication to the conclusion that there is no right to protection from obstruction of access to sunlight. The court's statement that a landowner has no right to light should be the conclusion, not its initial premise. The court did not explain why an owner's interest in unobstructed light should not be protected or in what manner an owner's interest in unobstructed sunlight differs from an owner's interest in being free from obtrusive noises or smells or differs from an owner's interest in unobstructed use of water. The recognition of a *per se* exception to private nuisance law may invite unreasonable behavior.

[14] For a discussion of nuisance law, see Ellickson, *Alternatives to Zoning: Covenants, Nuisance Rules, and Fines as Land Use Controls*, 40 U. Chi. L. Rev. 681 (1973); Comment, *Nuisance as a Modern Mode of Land Use Control*, 46 Wash. L. Rev. 47 (1970).

We therefore hold that private nuisance law, that is, the reasonable use doctrine as set forth in the Restatement, is applicable to the instant case. Recognition of a nuisance claim for unreasonable obstruction of access to sunlight will not prevent land development or unduly hinder the use of adjoining land. It will promote the reasonable use and enjoyment of land in a manner suitable to the 1980's. That obstruction of access to light might be found to constitute a nuisance in certain circumstances does not mean that it will be or must be found to constitute a nuisance under all circumstances. The result in each case depends on whether the conduct complained of is unreasonable.

Accordingly we hold that the plaintiff in this case has stated a claim under which relief can be granted. Nonetheless we do not determine whether the plaintiff in this case is entitled to relief. In order to be entitled to relief the plaintiff must prove the elements required to establish actionable nuisance, and the conduct of the defendant herein must be judged by the reasonable use doctrine.

## IV.

The defendant asserts that even if we hold that the private nuisance doctrine applies to obstruction of access to sunlight across adjoining land, the circuit court's granting of summary judgment should be affirmed.

Although the memorandum decision of the circuit court in the instant case is unclear, it appears that the circuit court recognized that the common law private nuisance doctrine was applicable but concluded that defendant's conduct was not unreasonable.[15] The circuit court ap-

---

[15] As noted previously this court has adopted the reasonableness doctrine set forth in sec. 822 of the Restatement (Second) of Torts. *CEW Mgmt. Corp. v. First Federal Savings & Loan Association,* 88 Wis. 2d 631, 633, 227 N.W.2d 766 (1979). Sec. 822 provides as follows:

parently attempted to balance the utility of the defendant's conduct with the gravity of the harm. Sec. 826, Restatement (Second) of Torts (1977).[16] The defendant urges us to accept the circuit court's balance as adequate. We decline to do so.

"One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities."

Further, sec. 821F, Restatement (Second) of Torts (1977) provides as follows:

"There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose."

[16] The factors involved in determining the gravity of the harm caused by the conduct complained of are set out in sec. 827 of the Restatement as follows:

"Sec. 827. Gravity of Harm—Factors Involved.

In determining the gravity of the harm from an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

(a) The extent of the harm involved;

(b) the character of the harm involved;

(c) the social value that the law attaches to the type of use or enjoyment invaded;

(d) the suitability of the particular use or enjoyment invaded to the character of the locality; and

(e) the burden on the person harmed of avoiding the harm."

The factors involved in determining the utility of conduct complained of are set out in sec. 828 of the Restatement as follows:

"Sec. 828. Utility of Conduct—Factors Involved.

In determining the utility of conduct that causes an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

(a) the social value that the law attaches to the primary purpose of the conduct;

(b) the suitability of the conduct to the character of the locality; and

(c) the impracticability of preventing or avoiding the invasion."

The circuit court concluded that because the defendant's proposed house was in conformity with zoning regulations, building codes and deed restrictions, the defendant's use of the land was reasonable. This court has concluded that a landowner's compliance with zoning laws does not automatically bar a nuisance claim. Compliance with the law "is not the controlling factor, though it is, of course, entitled to some weight." *Bie v. Ingersoll,* 27 Wis. 2d 490, 495, 135 N.W.2d 250 (1965). The circuit court also concluded that the plaintiff could have avoided any harm by locating his own house in a better place. Again, plaintiff's ability to avoid the harm is a relevant but not a conclusive factor. See secs. 826, 827, 828, Restatement (Second) of Torts (1977).

Furthermore, our examination of the record leads us to conclude that the record does not furnish an adequate basis for the circuit court to apply the proper legal principles on summary judgment. The application of the reasonable use standard in nuisance cases normally requires a full exposition of all underlying facts and circumstances. Too little is known in this case of such matters as the extent of the harm to the plaintiff, the suitability of solar heat in that neighborhood, the availability of remedies to the plaintiff, and the costs to the defendant of avoiding the harm.[17] Summary judgment is not an appropriate procedural vehicle in this case when the circuit court must weigh evidence which has not been presented at trial. 6 (Pt. 2) Moore's *Federal Practice,* 56.15 [7], pp. 56–638 (1982) ; 10 Wright and Miller, *Federal Practice and Procedure—Civil,* secs. 2729, 2731 (1973).

Because the plaintiff has stated a claim of common law private nuisance upon which relief can be granted, the judgment of the circuit court must be reversed. We need not, and do not, reach the question of whether the complaint states a claim under sec. 844.01, Stats. 1979–

---

[17] See also note 2 *supra.*

80, or under the doctrine of prior appropriation. *Attoe v. Madison Professional Policemen's Assoc.*, 79 Wis. 2d 199, 205, 255 N.W.2d 489 (1977).

For the reasons set forth, we reverse the judgment of the circuit court dismissing the complaint and remand the matter to circuit court for further proceedings not inconsistent with this opinion.

*By the Court.*—The judgment of the circuit court is reversed and the cause remanded for proceedings not inconsistent with this opinion.

CECI, J., took no part.

WILLIAM G. CALLOW, J. *(dissenting)*. The majority has adopted the Restatement's reasonable use doctrine to grant an owner of a solar heated home a cause of action against his neighbor who, in acting entirely within the applicable ordinances and statutes, seeks to design and build his home in such a location that it may, at various times during the day, shade the plaintiff's solar collector, thereby impeding the efficiency of his heating system[1] during several months of the year. Because I believe the facts of this case clearly reveal that a cause of action for private nuisance will not lie, I dissent.

The majority arrives at its conclusion that the common law private nuisance doctrine is applicable by analogizing this situation with the spite fence cases which protect a landowner from *malicious* obstruction of access to light. *Supra*, at 233–235. *See Piccirilli v. Groccia*, 114 R.I. 36, 39, 327 A.2d 834, 837, (1974) (plaintiff must prove allegedly objectionable fence was erected *solely* for the avowed purpose of damaging the abutting neighbor and not for the advantage of the person who constructed the fence) ; *Schorck v. Epperson*, 74 Wyo. 286, 287–88, 287 P.2d 467 (1955) (doctrine of private nuisance founded

---

[1] Plaintiff testified that he has a backup electrical system as required by law in this state. Thus, if the solar system fails or loses efficiency, he may resort to the electrical system.

on maxim that no one should have a legal right to make a malicious use of his property for no benefit to himself but merely to injure another). *Accord Daniel v. Birmingham Dental Mfg. Co.,* 207 Ala. 659, 661, 93 S. 652 (1922); *Green v. Schick,* 194 Okla. 491, 492, 153 P.2d 821 (1944). *See also* Comment, *Obstruction of Sunlight as a Private Nuisance,* 65 Calif. L. Rev. 94, 99–102 (1977) ("the ironclad rule has been that the obstruction of a neighbor's light and air is not a nuisance if it serves *any* useful purpose"). *Id.* at 101 (emphasis in original). Courts have likewise refused to limit interference with television reception and other broadcast signals. *The People ex rel. Hoogasian v. Sears, Roebuck and Co.,* 52 Ill. 2d 301, 305, 287 N.E.2d 677 (1972), *cert. denied,* 409 U.S. 1001. Clearly, the spite fence cases, as their name implies, require malice which is not claimed in this case.

The majority then concludes that this court's past reluctance to extend protection to a landowner's access to sunlight beyond the spite fence cases is based on obsolete policies which have lost their vigor over the course of the years. *Supra,* at 237. The three obsolete policies cited by the majority are: (1) Right of landowners to use their property as they desire as long as no physical damage is done to a neighbor; (2) In the past, sunlight was valued only for aesthetic value, not a source of energy; and (3) Society has a significant interest in not impeding land development. *Supra,* at 235. *See* Comment, *Obstruction of Sunlight as a Private Nuisance, supra* at 105–12. The majority has failed to convince me that these policies are obsolete.

It is a fundamental principle of law that a "landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land." *United States v. Causby,* 328 U.S. 256, 264 (1946); *In Re Honolulu Rapid Transit Co.,* 54 Hawaii 402, 408, 507 P.2d 755 (1973); *Granberry v. Jones, et al.,* 188 Tenn. 51, 54–55, 216 S.W.2d 721 (1949). As stated in

the frequently cited and followed case of *Fontainebleau Hotel Corp. v. Forty-Five Twenty-Five, Inc.*, 114 So. 2d 357 (Fla. Dist. Ct. App. 1959), *cert. denied*, 117 So. 2d 842 (Fla. 1960) :

"There being, then, no legal right to the free flow of light and air from the adjoining land, it is universally held that where a structure serves a useful and beneficial purpose, it does not give rise to a cause of action, either for damages or for an injunction under the maxim *sic utere tuo ut alienum non laedas*, even though it causes injury to another by cutting off the light and air and interfering with the view that would otherwise be available over adjoining land in its natural state, regardless of the fact that the structure may have been erected partly for spite." *Id.* at 359 (emphasis in original).

*See Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 127, 99 Cal. Rptr. 350, 357 (1971). I firmly believe that a landowner's right to use his property within the limits of ordinances, statutes, and restrictions of record where such use is necessary to serve his legitimate needs is a fundamental precept of a free society which this court should strive to uphold.

As one commentator has suggested :

"It is fashionable to dismiss such values as deriving from a bygone era in which people valued development as a 'goal in itself,' but current market prices for real estate, and more particularly the premiums paid for land whose zoning permits intensive use, suggest that people still place very high values on such rights."

Williams, *Solar Access and Property Rights: A Maverick Analysis*, 11 Conn. L. Rev. 430, 443 (1979) (footnote omitted). *Cf.* Goble, *Solar Access and Property Rights: Reply to a "Maverick" Analysis*, 12 Conn. L. Rev. 270 (1980).

The majority cites two zoning cases, *Village of Euclid v. Ambler Realty Company*, 272 U.S. 365 (1926), and *Just v. Marinette County*, 56 Wis. 2d 7, 201 N.W.2d 761

(1972), to support the conclusion that society has increasingly regulated private land use in the name of public welfare. *Supra,* at 236. The cases involving the use of police power and eminent domain are clearly distinguishable from the present situation as they relate to interference with a private right solely for the *public* health, safety, morals, or welfare. In the instant case, we are dealing with an action which seeks to restrict the defendant's private right to use his property, notwithstanding a complete lack of notice of restriction to the defendant and the defendant's compliance with applicable ordinances and statutes. The plaintiff who *knew* of the potential problem before the defendant acquired the land seeks to impose such use restriction to accommodate his personal, private benefit—a benefit which could have been accommodated by the plaintiff locating his home in a different place on his property or by acquiring the land in question when it was for sale prior to its acquisition by the defendant.

I know of no cases repudiating policies favoring the right of a landowner to use his property as he lawfully desires or which declare such policies are "no longer fully accepted or applicable" in this context. *Supra,* at 236.[2] The right of a property owner to lawful enjoyment of his property should be vigorously protected, particularly in

---

[2] Perhaps one reason courts have been hesitant to recognize a cause of action for solar blockage is that such a suit would normally only occur between two abutting landowners, and it is hoped that neighbors will compromise and reach agreement between themselves. This has, undoubtedly, been done in a large percentage of cases. To now recognize a cause of action for solar blockage may thwart a policy of compromise between neighbors. *See* Williams, *Solar Access and Property Rights: A Maverick Analysis,* 11 Conn. L. Rev. 430, 441–42 (1979). *See also* S. Kraemer, *Solar Law,* 138 (1978) ("[a] deterring factor to the use of private nuisance to assure access to direct sunlight is the resultant litigation between neighbors").

those cases where the adjacent property owner could have insulated himself from the alleged problem by acquiring the land as a defense to the potential problem or by provident use of his own property.

The majority concludes that sunlight has not heretofore been accorded the status of a source of energy, and consequently it has taken on a new significance in recent years. Solar energy for home heating is at this time sparingly used and of questionable economic value because solar collectors are not mass produced, and consequently, they are very costly. Their limited efficiency may explain the lack of production.

Regarding the third policy the majority apparently believes is obsolete (that society has a significant interest in not restricting land development), it cites *State v. Deetz*, 66 Wis. 2d 1, 224 N.W.2d 407 (1974). I concede the law may be tending to recognize the value of aesthetics over increased volume development and that an individual may not use his land in such a way as to harm the *public*. The instant case, however, deals with a *private* benefit. I note that this court in *Deetz* stated: "The reasonable use rule retains . . . a policy of favoring land improvement and development." *Id.* at 20. *See also id.* at 15. *Accord Moritz v. Buglewicz,* 187 Neb. 819, 194 N.W.2d 215 (1972). I find it significant that community planners are dealing with this country's continued population growth and building revitalization where "[t]he number of households is expected to reach almost 100 million by the end of the decade; that would be 34 percent higher than the number in 1970." F. Strom, *1981 Zoning and Planning Law Handbook,* sec. 22.02[3], 396 (1981). It is clear that community planners are acutely aware of the present housing shortages, particularly among those two groups with limited financial resources, the young and the elderly. *Id.* While the majority's policy arguments may be directed to a cause of action for

public nuisance, we are presented with a private nuisance case which I believe is distinguishable in this regard.[3]

I would submit that any policy decisions in this area are best left for the legislature. "What is 'desirable' or 'advisable' or 'ought to be' is a question of policy, not a question of fact. What is 'necessary' or what is 'in the best interest' is not a fact and its determination by the judiciary is an exercise of legislative power when each involves political considerations." *In re City of Beloit,* 37 Wis. 2d 637, 644, 155 N.W.2d 633 (1968). *See generally Holifield v. Setco Industries, Inc.,* 42 Wis. 2d 750, 758, 168 N.W.2d 177 (1969); Comment, *Solar Rights: Guaranteeing a Place in the Sun,* 57 Or. L. Rev. 94, 126–27 (1977) (litigation is a slow, costly, and uncertain method of reform). I would concur with these observations of the trial judge: "While temptation lingers for the court to declare by judicial fiat what is right and what should be done, under the facts in this case, such action under our form of constitutional government where the three branches each have their defined jurisdiction and power, would be an intrusion of judicial egoism over legislative passivity."

---

[3] I am amused at the majority's contention that what constitutes a nuisance today would have been accepted without question in earlier times. *Supra* 237. This calls to mind the fact that, in early days of travel by horses, the first automobiles were considered nuisances. Later, when automobile travel became developed, the horse became the nuisance. Ellickson, *Alternatives to Zoning: Covenants, Nuisance Rules, and Fines as Land Use Controls,* 40 U. Chi. L. Rev. 681, 731 (1973). This makes me wonder if we are examining the proper nuisance in the case before us. In other words, could it be said that the solar energy user is creating the nuisance when others must conform their homes to accommodate his use? I note that solar panel glare may temporarily blind automobile drivers, reflect into adjacent buildings causing excessive heat, and otherwise irritate neighbors. Certainly in these instances the solar heating system constitutes the nuisance.

The legislature has recently acted in this area. Chapter 354, Laws of 1981 (effective May 7, 1982), was enacted to provide the underlying legislation enabling local governments to enact ordinances establishing procedures for guaranteeing access to sunlight. This court's intrusion into an area where legislative action is being taken is unwarranted, and it may undermine a legislative scheme for orderly development not yet fully operational.

Chapter 354, Laws of 1981, sec. 66.032, provides specific conditions for solar access permits. In part that section provides for impermissible interference with solar collectors within specific limitations:

"66.032 **Solar access permits.** (1) . . .
" (f) 'Impermissible interference' means the blockage of solar energy from a collector surface or proposed collector surface for which a permit has been granted under this section during a collector use period if such blockage is by any structure or vegetation on property, an owner of which was notified under sub. (3) (b). *'Impermissible interference' does not include:*
"1. Blockage by a narrow protrusion, including but not limited to a pole or wire, which does not substantially interfere with absorption of solar energy by a solar collector.
"2. *Blockage by any structure constructed, under construction or for which a building permit has been applied for before the date the last notice is mailed or delivered under sub. (3)(b).*
"3. Blockage by any vegetation planted before the date the last notice is mailed or delivered under sub. (3) (b) unless a municipality by ordinance under sub. (2) defines impermissible interference to include such vegetation." (Emphasis added.)

Sec. 66.032(3) (b) provides for notice:

" (3) PERMIT APPLICATIONS.
" (b) An agency shall determine if an application is satisfactorily completed and shall notify the applicant of its determination. If an applicant receives notice that

an application has been satisfactorily completed, *the applicant shall deliver by certified mail or by hand a notice to the owner of any property which the applicant proposes to be restricted by the permit under* sub. (7). The applicant shall submit to the agency a copy of a signed receipt for every notice delivered under this paragraph. The agency shall supply the notice form. The information on the form may include, without limitation because of enumeration:

"1. The name and address of the applicant, and the address of the land upon which the solar collector is or will be located.

"2. That an application has been filed by the applicant.

"3. That the permit, if granted, may affect the rights of the notified owner to develop his or her property and to plant vegetation.

"4. The telephone number, address and office hours of the agency.

"5. That *any person may request a hearing* under sub. (4) within 30 days after receipt of the notice, and the address and procedure for filing the request." (Emphasis added.)

This legislative scheme would deal with the type of problem presented in the present case and precludes the need for judicial activism in this area.

I examine with interest the definition of nuisance as set out in the Restatement (Second) of *Torts* and adopted in the majority opinion: "A private nuisance is a nontrespassory *invasion* of another's interest in the private use and enjoyment of land." Restatement (Second) of *Torts* sec. 821D (1977) (emphasis added). The majority believes that the defendant's obstruction of the plaintiff's access to sunlight falls within the broad definition of "use and enjoyment of land." *Supra,* at 230–232. I do not believe the defendant's "obstruction" of the plaintiff's access to sunlight falls within the definition of "invasion," as it applies to the private use and enjoyment of land. Invasion is typically synonymous with

"entry," "attack," "penetration," "hostile entrance," "the incoming or spread of something unusually hurtful." *Webster's Third International Dictionary,* 1188 (1966). Most of the nuisance cases arising under this definition involve noxious odors, smoke, blasting, flooding, or *excessive light* invading the plaintiff's right to the use of enjoyment of his property. *See Prosser, Law of Torts,* sec. 89, 591–92 (4th ed. 1971).[4] *See* Williams, *Solar Access and Property Rights: A Maverick Analysis,* 11 Conn. L. Rev. at 441 (there are significant practical differences between dust and noise, on the one hand, and solar access blockage on the other). Clearly, an owner who merely builds his home in compliance with all building code and municipal regulations is not "invading" another's right to the use and enjoyment of his property. To say so is to acknowledge that all construction may be an "invasion" because all construction has some restrictive impact on adjacent land. A "view," for example, is modified by any construction simply because it is there.

In order for a nuisance to be actionable in the instant case, the defendant's conduct must be "intentional and unreasonable."[5] It is impossible for me to accept the majority's conclusion that Mr. Maretti, in lawfully seeking to construct his home, may be intentionally and unreasonably interfering with the plaintiff's access to sunlight. In addressing the "unreasonableness" component of the actor's conduct, it is important to note that

[4] Dean Prosser also includes disturbances with peace of mind occasioned by "bawdy houses," stored explosives, or fire hazards within the purview of the definition of nuisance. I submit these indicia of nuisance relate to a defendant's unreasonable or unlawful use of his property.

[5] Unintentional conduct may also be actionable if the plaintiff asserts negligence or recklessness or if an abnormally dangerous condition or activity exists. Restatement (Second) of *Torts* sec. 822(b) (1979). The plaintiff's complaint does not specify whether the defendant's conduct was intentional, negligent, or reckless.

"[t]here is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." Restatement (Second) of *Torts* sec. 821F (1979). The comments to the Restatement further reveal that "[if] normal persons in that locality would not be substantially annoyed or disturbed by the situation, then the invasion is not a significant one, even though the idiosyncracies of the particular plaintiff may make it unendurable to him." *Id.* Comment d.[6] *See Bie v. Ingersoll,* 27 Wis. 2d 490, 493, 135 N.W.2d 250 (1965) ; *Belmar Drive-In Theatre Co. v. The Illinois State Toll Highway Commission et al.,* 34 Ill. 2d 544, 547–49, 216 N.E.2d 788 (1966).

I conclude that plaintiff's solar heating system is an unusually sensitive use. In other words, the defendant's proposed construction of his home, under ordinary circumstances, would not interfere with the use and enjoyment of the usual person's property. *See* W. Prosser, *supra,* sec. 87 at 578–79. "The plaintiff cannot, by devoting his own land to an unusually sensitive use, such

---

[6] Consider, for example, the following illustrations provided in the Restatement:

"2. A operates a race track, which is illuminated at night by flood lights directed downward. B operates next door an open-air motion picture theater, screened off from the highway. The reflection of A's lights, equivalent to the light of the full moon, would be harmless and unobjectionable to anyone making a normal use of adjoining land, but so seriously interferes with the operation of B's motion pictures that B loses customers. B cannot recover from A for a private nuisance.

"3. A operates a slaughterhouse, which gives off highly offensive orders, sufficient to make life unendurable for any normal person living near it. B, who lives next door is without any sense of smell, and is not personally troubled by the odors. B can recover from A for a private nuisance."

Restatement (Second) of *Torts* sec. 821F (1979). In my opinion, the instant case clearly fits under the first example.

as a drive-in motion picture theater easily affected by light, make a nuisance out of conduct of the adjoining defendant which would otherwise be harmless." *Id.* at 579 (footnote omitted).[7]

Looking solely at the defendant's conduct, the circuit court concluded that the defendant's construction of a house did not create a cause of action for nuisance because the defendant's proposed home was in conformity with zoning regulations, building codes, deed restrictions, as well as the fact that the defendant's use of the land to build his home was reasonable. The majority, however, cites *Bie v. Ingersoll, supra,* for the proposition that compliance with the law is not the controlling factor in evaluating a nuisance claim. I note that *Bie* involved the operation of an asphalt plant from which dust and odors permeated the plaintiff's adjoining residence. The defendants asserted that, because the property occupied by the asphalt plant was zoned for industrial use, the plant could not constitute a nuisance. This court concluded that the zoning classification was not the controlling factor. "It is rather 'the peculiar nature and the location of the business, not the fact that it is a business, that constitutes the private nuisance.'" 27 Wis. 2d at 495. The *Bie* case is clearly distinguishable from the case at bar. Here,

---

[7] Amicus curiae United States of America in its brief to this court advances the proposition that even a sensitive use is entitled to protection from unreasonable interference. Amicus analogizes to several "mink cases" which involve negligence actions. *See Bell v. Gray-Robinson Construction Company,* 265 Wis. 652, 62 N.W.2d 390 (1954); *Maitland v. Twin City Aviation Corp.,* 254 Wis. 541, 37 N.W.2d 74 (1949). A thorough reading of these decisions reveals that they are clearly distinguishable from the case at bar. No cases have been cited in this jurisdiction which limit this.

I note that the federal government supports the plaintiff's position in the instant case. If solar energy is in the national interest, federal legislation should be enacted.

the defendant seeks to build his home in compliance with all existing laws, and it will have no "peculiar nature." As I read the *Bie* case, the negative implication from its facts is that a business which does not emit dust or odors (*i.e.*, which has no peculiar nature) and which is in conformity with zoning regulations is not a private nuisance. I would hold under the facts of the instant case that the defendant's conduct is not unreasonable per se, and consequently, a nuisance cause of action cannot stand.

I further believe that the majority's conclusion that a cause of action exists in this case thwarts the very foundation of property law. Property law encompasses a system of filing and notice in a place for public records to provide prospective purchasers with any limitations on their use of the property. Such a notice is not alleged by the plaintiff. Only as a result of the majority's decision did Mr. Maretti discover that a legitimate action exists which would require him to defend the design and location of his home against a nuisance suit, notwithstanding the fact that he located and began to build his house within the applicable building, municipal, and deed restrictions.

Obviously, the legislature was cognizant of the importance of notice. In Chapter 354, Laws of 1981, secs. 66.032(5) and (6) deal with notice to an adjoining landowner:

"(5) PERMIT GRANT. (a) The agency shall grant a permit if the agency determines that:

"1. The granting of a permit will not unreasonably interfere with the orderly land use and development plans of the municipality;

"2. No person has demonstrated that she or he has present plans to build a structure that would create an impermissible interference by showing that she or he has applied for a building permit prior to receipt of a notice under sub. (3)(b), has expended at least $500 on planning or designing such a structure or by submitting any other credible evidence that she or he has made substan-

tial progress toward planning or constructing a structure that would create an impermissible interference; and

"3. The benefits to the applicant and the public will exceed any burdens.

"(b) An agency may grant a permit subject to any condition or exemption the agency deems necessary to minimize the possibility that the future development of nearby property will create an impermissible interference or to minimize any other burden on any person affected by granting the permit. Such conditions or exemptions may include but are not limited to restrictions on the location of the collector and requirements for the compensation of persons affected by the granting of the permit.

"(6) RECORD OF PERMIT. If an agency grants a permit:

"(a) The agency shall specify the property restricted by the permit under sub. (7) and shall prepare notice of the granting of the permit. The notice shall include the identification required under s. 706.05(2)(c) for the owner and the property upon which the solar collector is or will be located and for any owner and property restricted by the permit under sub. (7), and shall indicate that the property may not be developed and vegetation may not be planted on the property so as to create an impermissible interference with the solar collector which is the subject of the permit unless the permit affecting the property is terminated under sub. (9) or unless an agreement affecting the property is filed under sub. (10).

"(b) The applicant shall record with the register of deeds of the county in which the property is located the notice under par. (a) for each property specified under par. (a) and for the property upon which the solar collector is or will be located."

In recognizing this common law cause of action, this court's decision is in direct conflict with the 1981 legislative provisions for the granting of solar access permits. In a municipality which enacts the ordinance in conformity with the statute, neighbors know their respective rights. Under the majority decision, in a municipality which does not enact the ordinance, a common law cause of action for nuisance exists without any defined rights.

I believe the facts of the instant controversy present the classic case of the owner of a solar collector who fails to take any action to protect his investment. There is nothing in the record to indicate that Mr. Prah disclosed his situation to Mr. Maretti prior to Maretti's purchase of the lot or attempted to secure protection for his solar collector prior to Maretti's submission of his building plans to the architectural committee. Such inaction should be considered a significant factor in determining whether a cause of action exists.

The majority's failure to recognize the need for notice may perpetuate a vicious cycle. Maretti may feel compelled to sell his lot because of Prah's solar collector's interference with his plans to build his family home. If so, Maretti will not be obliged to inform prospective purchasers of the problem. Certainly, such information will reduce the value of his land. If the presence of collectors is sufficient notice, it cannot be said that the seller of the lot has a duty to disclose information peculiarly within his knowledge. I do not believe that an adjacent lot owner should be obliged to experience the substantial economic loss resulting from the lot being rendered unbuildable by the contour of the land as it relates to the location and design of the adjoining home using solar collectors.[8]

I am troubled by the majority's apparent retrospective application of its decision. I note that the court in *Deetz* saw the wisdom and fairness in rendering a prospective decision. 66 Wis. 2d at 24. Surely, a decision such as this

[8] Mr. Prah could have avoided this litigation by building his own home in the center of his lot instead of only ten feet from the Maretti lot line and/or by purchasing the adjoining lot for his own protection. Mr. Maretti has already moved the proposed location of his home over an additional ten feet to accommodate Mr. Prah's solar collector, and he testified that moving the home any further would interfere with his view of the lake on which the property faces.

should be accorded prospective status. Creating the cause of action after the fact results in such unfair surprise and hardship to property owners such as Maretti.

Because I do not believe that the facts of the present case give rise to a cause of action for private nuisance, I dissent.