Metzger vs. Hochrein.

Dodge, J., dissents.

---

Metzger, Respondent, vs. Hochrein, Appellant.

*May 18 — June 21, 1900.*

*Nuisance: Unsightly fence: Obstruction to view: Pleading.*

1. In an action to restrain an alleged nuisance, a complaint — alleging, in substance, that plaintiff is possessed of an attractive house surrounded by lawns; that defendant, owning the adjoining lot, built a fence four feet from plaintiff's house, but entirely on defendant's land, consisting of rough tamarack posts, from eight to sixteen feet high, and old, unsightly, and partially decayed lumber of varying lengths, which fence extended back about ninety feet from the street, and was supported by wires strung from the tops of the posts to defendant's house; that the fence shut off the view from the

Metzger vs. Hochrein.

house to the street, injured the value of the property for rent or sale, and was wilfully and maliciously erected — fails to state a cause of action.

2. In the absence of physical injury to adjoining property or its occupants, one may use his own land or erect on it any structure he may see fit, regardless of the unreasonableness or maliciousness of his motives, even if by so doing the adjoining property is rendered less valuable and desirable by diminished beauty of surroundings, access of light, and opportunity to see it from the surrounding territory or to freely view such territory therefrom.

APPEAL from an order of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Action to restrain an alleged nuisance on facts set forth in the complaint in substance as follows: Plaintiff owns lots 5, 6, 7, and 8 of block 15, division 1, in the village of Glenbeulah, Wisconsin, on which she has a dwelling house located about four feet from the west line, surrounded by made lawns and yards, making an attractive and valuable home. Defendant owns the adjoining lot on the west of plaintiff's land, in connection with other lots, on which he has a dwelling house, located about fifty feet from the division line. July 22, 1899, defendant set rough tamarack posts, from eight to sixteen feet high, along said division line, wholly on his own land, about four feet from the line of plaintiff's dwelling house, and extending back from the street front about ninety feet. He strung wires from the tops of such posts to his house, in order to hold the posts firmly in position, and on and supported by such posts he constructed a tight board fence of rough, old, unsightly, and partly decayed lumber taken from an old ice house, such fence being from eight to sixteen feet high, the highest part being opposite the windows in plaintiff's house. Said structure is, by reason of its unsightly character and proximity to plaintiff's house, a nuisance. It was wilfully and maliciously erected. It partially shuts off the view from plaintiff's house to the street and from the street to the house,

greatly injures the value of the property for rent or sale, and if it be permitted to continue the use of such house as a dwelling place will have to be abandoned.

The defendant demurred to the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action. The demurrer was overruled, and defendant appeals.

*M. C. Mead*, for the appellant.

*A. C. Shaw*, for the respondent.

MARSHALL, J. The question presented here is, May a person rightly use his own land as he sees fit, regardless of his motives, if that use render adjoining property less valuable and desirable for dwelling-house purposes, merely from diminished beauty of surroundings and access of light to the property, and opportunity to see it from the surrounding territory and to freely view such territory therefrom, there being nothing projected from the adjacent land causing any injury to such property or its occupants? It will be noted that it is not claimed the acts complained of caused any physical injury to plaintiff's property or to the occupants thereof. The sole complaint is that the beauty and cheerfulness of the property has been injured by defendant's conduct, and that the structure complained of was erected unreasonably and with malicious motives. So the case comes down plainly to the inquiry stated.

It is not an easy task to define with clearness what constitutes a nuisance, so that each case, as it arises, can be accurately tested thereby. Probably the language of Wood on Nuisances, at § 1, often quoted with approval by this court, comes as near strict accuracy as the nature of the subject will permit: Every unlawful use by a person of his own property in such a way as to cause injury to the property rights of another, producing material annoyance, inconvenience, discomfort, or hurt; and every enjoyment by one of

Metzger vs. Hochrein.

his own property which violates the rights of another in an
essential degree, constitutes an actionable nuisance.   In ap-
plying that to any given state of facts, it must be kept in
mind that the injury referred to, whether to property or the
occupants thereof, is physical.   A trade may be carried on
in such a way, either by polluting the atmosphere or by
creating such disturbances as to cause physical inconvenience
to the occupants of adjoining property, as to constitute a
nuisance within the rule stated; but acts which do not reach
the adjoining property in a physical sense, yet diminish its
value and desirability for a particular use, as for dwelling-
house purposes, have not been supposed to constitute an
actionable nuisance.   True, there are decisions in the state of
Michigan, and some *dicta* of courts elsewhere, to the effect
that, if one maliciously use his own property to the annoy-
ance of his neighbors, regardless of any physical discomfort
to them, he is guilty of an actionable nuisance; the element
of malice rendering that an actionable wrong which would
otherwise be rightful.   That doctrine, however, has very
little support.   None, in fact, where the rules of the com-
mon law have not been changed by legislation and the courts
have kept strictly within their legitimate sphere as admin-
istrators of the law.   The general rule is that whatever a
man may lawfully do on his own property under any cir-
cumstances, he may do regardless of the motive for his con-
duct.   16 Am. & Eng. Ency. of Law, 930; *South Royalton
Bank v. Suffolk Bank*, 27 Vt. 505; *Mahan v. Brown*, 13
Wend. 261; *Phelps v. Nowlen*, 72 N. Y. 40; *Bordeaux v.
Greene*, 22 Mont. 254; *Rideout v. Knox*, 148 Mass. 368; *Guest
v. Reynolds*, 68 Ill. 478.   That doctrine is as well defined in
the common law as any that has to do with the rights and
remedies cognizable by courts, and courts that have departed
from it have, as it seems, trespassed upon the domain of the
legislative department of the government.

    In *Rideout v. Knox, supra*, the power of the legislature

Metzger vs. Hochrein.

even was questioned to curtail the use by a person of his own property to the extent of preventing its malicious use, the act under consideration being one to prevent the maintenance of unreasonably high fences from malicious motives. The court said, in effect, that the ownership of land carries with it the constitutional right to enjoy such land in any way the owner sees fit, limited only to such external effects as diminish the physical enjoyment of adjoining property; that such right, regardless of the motive for its exercise, is a property right within constitutional protection, the same as any other property right, and cannot be interfered with except to the extent of reasonable police regulations; that legislation preventing the unreasonable maintenance of a high fence, where a bad motive is the sole purpose thereof, is within the limits of the constitutional exercise of police power. But it was intimated that legislation, prohibiting the maintenance of a fence where a bad motive for such maintenance is coupled with some other that would cause it independent of the mere desire thereby to annoy an adjoining owner, would contravene constitutional rights of property. The result of the case was that, but for the statutory police regulation of the height of fences, the plaintiff would have been remediless regardless of the height of the fence in question or the motive for erecting and maintaining it.

In the very recent case of *Bordeaux v. Greene, supra,* where the fence complained of was forty feet high, the court said that the right of one landowner to erect a structure so as to shut off air and light from the windows of a building on adjoining property, is unaffected by the motive; therefore, that whether the fence in question was erected as an improvement or ornament to the property on which it was located, or purely to annoy adjoining landowners, made no difference as to the legal right to maintain it.

With few exceptions, the authorities are all in harmony

Metzger vs. Hochrein.

with the foregoing, clearly indicating that the complaint in question fails to state a cause of action, and that the demurrer was improperly overruled.

This is one of the many cases that may arise where the doctrine of personal liberty and personal dominion of one over his own property enables him to do things to the annoyance of others, not causing actual, material physical discomfort to them, for which there is no punishment, except loss of that respect which every right-thinking man desires from his neighbors, and the possession of which is a source of daily enjoyment. If one is so constituted as not to be susceptible to those feelings which a reasonably well-balanced man is supposed to possess, and is so constituted as to obtain more pleasure out of needlessly annoying others than by securing and retaining their respect as a manly member of society, his sovereign right in his own property, to use it as he may so far as that use does not physically extend outside his boundaries to the detriment of others, may be so exercised as to violate the moral obligations which every member of society owes to his neighbors, without any penalty being visited upon him for his misconduct, of which he can be made conscious.

*By the Court.*— The order overruling the demurrer is reversed, and the cause remanded for further proceedings according to law.

As to liability for malicious erection of fence, see note to *Letts v. Kessler* (54 Ohio St. 73), in 40 L. R. A. 177.— REP.