## RUSSELL ET AL. *v.* THE STATE.

[No. 5,074.   Filed January 14, 1904.]

NUISANCE.—*High Fence Not a Public Nuisance.*—The erection and maintenance of a fence ten or twelve feet high on one's own property, shutting off the view, light, and air of an adjoining property owner, is not a public nuisance within the meaning of §2154 Burns 1901, though the fence was erected through motives of malice.

From Marion Criminal Court (33,336); *Fremont Alford,* Judge.

James A. Russell and another were convicted of maintaining a nuisance, and appeal. *Reversed.*

*W. W. Herod, W. P. Herod* and *H. D. Merrifield,* for appellants.

*C. W. Miller,* Attorney-General, *C. C. Hadley, W. C. Geake, L. G. Rothschild* and *Frank Hendricks,* for State.

COMSTOCK, J.—This action was commenced by the State of Indiana against appellants, upon the affidavit of one August Haug, for erecting and maintaining a common nuisance, under §2154 Burns 1901, §2066 Horner 1901. The cause was first tried before a justice of the peace. From the justice's court an appeal was taken to the Marion Criminal Court, in which court appellants were found guilty, and fined $10 and costs.

Appellants separately assign errors—Mary, that the affidavit does not state facts sufficient to constitute a cause of action against her; James, that it does not state facts sufficient to constitute a cause of action against him; each, that it does not state facts to constitute an offense against the State of Indiana, and that the court erred in overruling their separate motions for a new trial.

The affiant Haug owned a residence property facing Dugdale street, in Indianapolis, occupied by one Kintz and family as tenants. Appellants owned the vacant lot immediately adjoining on the south facing the same street and the residence in which they lived immediately adjoining on the north of affiant's property, facing said Dugdale street. Appellants caused to be erected a fence from ten to twelve feet high wholly on their own land, beginning at the corner of their residence and running along a line from six to twelve inches from the line fence to the street; a like fence on their vacant lot running from the corner to Haug's house to the street; and two screens of the same height, made of dressed pine boards, opposite two windows in Haug's house looking out upon appellant's vacant lot. These screens were about four feet wide and placed about

Russell *v.* State.

five feet from the windows. The fence and screens were erected because of ill feeling between appellants and the Kintzs. The evidence as to the reasons of their ill feeling is conflicting. The affidavit charges a common nuisance. So much of the statute as is material reads as follows: "Whoever * * * erects, continues, or maintains any obstruction to the full use of property, so as to injure the property of another or essentially to interfere with the comfortable enjoyment of life shall be fined," etc.

By §290 Burns 1901 nuisance is defined as "whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property." It has been held that the injury referred to, whether to property or the occupants thereof, is physical. "Acts which do not reach the adjoining property in a physical sense, yet diminish its value and desirability for a particular use, as for dwelling-house purposes, have not been supposed to constitute an actionable nuisance." *Metzger* v. *Hochrein,* 107 Wis. 267, 83 N. W. 308, 50 L. R. A. 305, 81 Am. St. 841. Smoke, noise, and noisome smells may, from the property of an annoying neighbor, enter the premises of another, and thereby invade the legal right of him whose premises it reaches. Such right will be protected.

In the case of *Metzger* v. *Hochrein, supra,* it was held that maliciously to erect an unsightly high, board fence on one's own property in such a way as to obstruct the passage of light and air and obstruct the view to and from a neighbor's dwelling, by reason of which its value is injured, and the use of the house as a dwelling-house will have to be abandoned, is not an actionable wrong.

*Letts* v. *Kessler,* 54 Ohio St. 73, 42 N. E. 765, 40 L. R. A. 177, was a case in which L. and K. owned adjoining lots, and L. erected on his own lot a board fence reaching to the roof of K.'s house, which set upon the line of the

lots, which fence shut off the light and air from the windows of the house of K., to his injury, which fence was so erected by L. for no useful or ornamental motives, but from motives of unmixed malice toward K. In the action by K. against L. to compel the removal of the fence, it was held that L. had a legal right to erect and maintain such fence, and that neither law nor equity could compel its removal.

In *Glendon Iron Co.* v. *Uhler,* 75 Pa. St. 467, 471, 15 Am. Rep. 599, *Jenkins* v. *Fowler,* 24 Pa. St. 308, and *Fowler* v. *Jenkins,* 28 Pa. St. 176, it is said that a lawful act is not actionable, although it proceeds from malicious motives. These decisions are upon the ground that malicious motives can not make that wrong which in its own essence is lawful.

In *Knabe* v. *Levelle,* 23 N. Y. Supp. 818-824, it is held that the mere fact that a structure built by one upon his own land obstructs the view and shuts off the light and air from his neighbor's premises affords no ground for action, and the doctrine of prescription has no application.

There is a conflict of opinion upon the question presented in *Letts* v. *Kessler, supra.* Many cases support the doctrine established therein, and hold that an act legal in itself, and violating no legal right, can not be made actionable, even though it is prompted by malice and is prejudicial to others. Other courts of equal ability have, however, held that if one does an act wholly upon his own land, legal, but prejudicial to his neighbor, not for his own ornament or profit, but through unmixed malice to his neighbor, then he has done his neighbor an injury that is actionable. But in our opinion the correct rule is laid down in *Letts* v. *Kessler, supra.* See, also, *Triplett* v. *Jackson,* 5 Kan. App. 777, 48 Pac. 931; *Keiper* v. *Klein,* 51 Ind. 316; *Stein* v. *Hauck,* 56 Ind. 65, 26 Am. Rep. 10; *Guest* v. *Reynolds,* 68 Ill. 478, 18 Am. Rep. 570.

Russell *v.* State.

The maxim, "so use your own as not to injure another's property," has been held to mean, "so use your own property as not to injure the rights of another." *Jeffries* v. *Williams,* 5 Exch. 797; *Pittsburgh, etc., R. Co.* v. *Bingham,* 29 Ohio St. 364.

The affiant alleges that the fence shut off the view, light, and air from his said house. "Said structure being a constant annoyance, to the great damage and the common annoyance of all the neighbors in said street, then and there being and residing and going and returning and passing through the street and highway in front of said property, and the obstruction of the full use of the property of the affiant so as to injure said property and interfere with the full enjoyment of life," etc. The affidavit charges appellants with erecting and maintaining a public nuisance. A public nuisance is that which annoys such part of the public as necessarily come in contact with it— such as results from the violation of public rights, and producing no especial injury to one more than another of the public. "Private nuisances are injuries that result from the violation of private rights, and produce damages to but one or a few persons, so that it can not be said to be public." As belonging to this class is the building of a house with the eaves projecting over the lands of another, or the erection of a building so as to hide the ancient lights of several persons; or a tinsmith's shop, the noise of which annoys the occupants of but three or four tenements." Wood, Nuisance (3d ed.), §15.

By the testimony for the State it appears that many people live in the vicinity of the premises in question— five houses on the east side and six on the west side of Dugdale street, on the same square. One witness testified that she had seen crowds of people congregate there many evenings, some in the yard and some on the sidewalk; that they remained late at night; heard singing and loud talk. Another witness testified that upon two occasions she saw

a crowd near the fence, and heard them singing. One Sunday she saw five or six couples, going up and down the sidewalk, stop and look at the fence. Mrs. Kintz testified that the fence attracted crowds night and day, especially on Sunday. It is proper to say in this connection that Mr. Kintz played the guitar, that there were social gatherings at his house, and upon these occasions there was both vocal and instrumental music; that these parties lasted late in the night, and upon one occasion until 2 o'clock Sunday morning. That pedestrians should notice a fence of more than usual height, and remark upon it, does not indicate that they were annoyed thereby. That people collected on the outside of the yard and by the fence, and talked and sang, does not show that such gatherings were occasioned by this fence.

The public had no right of prospect upon either of the premises. There is evidence that the obstruction prevented the free admission of light and air on the north and south sides of the house of affiant, but there is no evidence that it injured his property, or interfered with the comfortable enjoyment of life of anyone except the occupants of the house. No right of the public has been invaded, and that is the charge of the affidavit before us. The evidence does not show that defendants neglected any duty to the public with which they were charged. It is not sufficient to sustain the charge.

The State was permitted to introduce testimony tending to show that appellants erected the structure from motives of malice. Whatever the rule may be in civil actions, motives of malice in a criminal prosecution for common nuisance are immaterial. See Wharton, Crim. Law (10th ed.), §1420.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.