APPLE HILL FARMS DEVELOPMENT, LLP, Plaintiff,

JON HUSS CONSTRUCTION CORP.,
Involuntary-Plaintiff-Respondent,

v.

Daryl PRICE,
Defendant-Third-Party Plaintiff-Appellant,

Nicole PALMER, Defendant-Third-Party Plaintiff,

v.

BERHOFF HOMES, LLC, Third-Party Defendant.

Court of Appeals

*No. 2011AP1241. Submitted on briefs April 24, 2012.
—Decided May 15, 2012.*

2012 WI App 69

(Also reported in 816 N.W.2d 914.)

162

On behalf of the defendant-third-party-plaintiff-appellant, the cause was submitted on the brief of *Andrew Wagener* of *Bollenbeck Wagener Spaude & Fyfe SC*, Appleton.

On behalf of the involuntary plaintiff-respondent, the cause was submitted on the brief of *David J. Winkel* of *Winkel Law Office*, Neenah.

Before Hoover, P.J., Peterson and Mangerson, JJ.

¶ 1. HOOVER, P.J. Daryl Price appeals a money judgment after a bench trial where the court determined Price's concrete retaining wall constituted a private nuisance. Price argues the circuit court erroneously denied his motions for summary judgment and directed verdict because a private nuisance cannot exist based merely on appearance. Price further argues the court improperly relied on the spite fence statute, WIS. STAT. § 844.10,[1] because the statute was not identified in the complaint, and the wall did not meet the statutory definition. Finally, Price argues the court erred because the evidence of damages was speculative. We affirm.

## BACKGROUND

¶ 2. Jon Huss Construction Corp. is a homebuilder that constructs fifty or more homes per year. Approximately one-third of the homes Huss builds are speculation homes intended for resale. As part of a parade of homes promotion, Huss completed a speculation home in August 2007 in Apple Hill Farms Development, LLP's subdivision. Price commenced construction of his home on a neighboring lot in September. Jon Huss testified that he introduced himself to Price that same month, explaining:

> I walked up to him and said, hi, I'm Jon Huss, I'm the builder next-door, I'd like to work with you if you have any problems over here, and he looked at me and he said, what the fuck do I need you for? I . . . said, oh, I guess you don't. I turned around and walked away.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

¶ 3.   Price obtained approval from Apple Hill to build his house at a specific elevation. This would require Price's lot to slope down toward Huss's[2] lot and be no more than four feet higher than Huss's lot at the border. However, Price built his home two feet higher than approved and decided not to slope his lot. Instead, he constructed a retaining structure, with an exposed thirty-two feet long, twelve feet high bare concrete wall near the property line, directly facing Huss's speculation home. The wall extended four feet above the surface of Price's lot, and was extended at each end by a natural stone retaining wall.

¶ 4.   John Hofferber, who built the wall, testified he built a brick ledge at its base to allow the wall to later be faced with brick or stone. Hofferber indicated that Apple Hill told him the wall needed to be faced and that he relayed that information to Price several times. Hofferber testified that Price always responded by telling him not to face the wall and that "he'll put stone or brick on it when a judge tells him he has to put stone or brick on." Hofferber further testified that Price stated he wanted the wall "ugly" to devalue Huss's property.

¶ 5.   Matthew Hurteau, another worker on Price's home, testified that Price stated he did not care what the wall looked like, that ugly was fine, and if anyone else did not like it that was too bad. Another witness testified he asked Price what he was going to do with the wall and Price responded that "the big ugly wall can face the ugly house next-door . . . ."

¶ 6.   Huss testified that numerous potential purchasers of his property told him or realtors that they would not buy his property unless something was done

---

[2] We refer to Jon Huss and his business entity interchangeably as Huss.

with the concrete wall. He also testified that the wall blocked the view from his property; blocked sunlight; and caused increased water, mud and stones to unnecessarily come onto the property from the Price property. He further testified that someone wrote "Ass Hole" on his lawn with grass killer.

¶ 7. Apple Hill sued Price, alleging the concrete wall and site grading violated several restrictive covenant provisions, and it named Huss as an involuntary plaintiff. Huss subsequently filed a claim alleging that the wall constituted a private nuisance. Huss alleged he repeatedly requested Price to abate the nuisance, and that Price refused to do so. The claim alleged Huss suffered damages as the result of Price's actions, including the inability to sell the Huss property, holding costs, and a decrease in fair market value. Huss also alleged that Price's actions were done intentionally to cause economic loss and damage to Huss.

¶ 8. Prior to trial, the parties entered into a partial settlement agreement, whereby Price agreed to modify the wall. Price cut off the four feet of wall that extended above ground level, and he faced the remaining eight feet of concrete wall with cultured stone to try to match it to the natural stone retaining walls at either end. The case proceeded to trial on the nuisance claim, and Huss prevailed. The court determined the wall was an intentional private nuisance under the common law, as well as under Wis. Stat. § 844.10. Further, the court found Huss suffered approximately $148,000 in damages due to holding costs, remedial measures, and loss in fair market value. Price now appeals.

## DISCUSSION

¶ 9. Price argues the circuit court erroneously denied his motions for summary judgment and directed verdict because a private nuisance cannot exist based

merely on appearance. Price contends Huss's claims should have been dismissed on summary judgment because Huss testified at deposition that there was no physical invasion into his property, no physical discomfort associated with the retaining wall, and his nuisance claim focused on the wall's appearance. Price similarly argues that, viewing the trial evidence in the light most favorable to Huss, a directed verdict was appropriate "because the only basis for the nuisance was appearance and the plaintiff never established an interference with the use of the property as a family residence."

¶ 10.   Price asserts, without citation to legal authority, that "[t]he law is . . . clear that unsightliness on its own is not enough to establish . . . a private . . . nuisance." He continues, "In addition, many courts throughout the United States have held that unsightliness alone is not a basis for nuisance." Price then cites numerous cases from across the country, but none from Wisconsin.

¶ 11.   Had the present case arisen in the 1800s, Price likely would have prevailed. In *Metzger v. Hochrein*, 107 Wis. 267, 269, 83 N.W. 308 (1900), the court upheld a landowner's right to erect a useless and unsightly sixteen-foot spite fence.[3] However, the legis-

---

[3] In *Metzger v. Hochrein*, 107 Wis. 267, 269, 272, 83 N.W. 308 (1900), the court explained:

The question presented here is, may a person rightly use his own land as he sees fit, regardless of his motives, if that use render adjoining property less valuable and desirable for dwelling-house purposes, merely from diminished beauty of surroundings and access of light to the property, and opportunity to see it from the surrounding territory and to freely view such territory therefrom, there being nothing projected from the adjacent land causing any injury to such property or its occupants? It will be noted that it is not claimed the acts complained of caused any physical injury to plaintiff's property or to the occupants thereof. The sole complaint is that the beauty and cheerfulness of the property has been

168

lature specifically overruled *Metzger* in 1903 and "enacted a law specifically defining a spite fence as an actionable private nuisance." *Prah v. Maretti*, 108 Wis. 2d 223, 234, 235 n.10, 321 N.W.2d 182 (1982) (citing 1903 Wis. Laws, ch. 81; WIS. STAT. § 280.08 (1925)); *see also Schultz v. Trascher*, 2002 WI App 4, ¶ 30, 249 Wis. 2d 722, 640 N.W.2d 130, (same; citing WIS. STAT. § 844.10). "The statute's enactment was the beginning of a trend in our real property law to limit unbridled land use." *Schultz*, 249 Wis. 2d 722, ¶ 30. The trend continued when our supreme court rejected per se exclusions to the "reasonable use" nuisance doctrine. *Id.* (citing *State v. Deetz*, 66 Wis. 2d 1, 224 N.W.2d 407 (1974)).

¶ 12.   Our supreme court further rejected *Metzger* in *Prah*, holding that a private nuisance might exist solely on the basis of unreasonably blocking sunlight to a neighboring property. *Prah*, 108 Wis. 2d at 240. The court cited the "modern American rule invalidating spite fences," and observed that the policies underlying

injured by defendant's conduct, and that the structure complained of was erected unreasonably and with malicious motives.

. . . .

This is one of the many cases that may arise where the doctrine of personal liberty and personal dominion of one over his own property enables him to do things to the annoyance of others, not causing actual, material physical discomfort to them, for which there is no punishment, except loss of that respect which every right-thinking man desires from his neighbors, and the possession of which is a source of daily enjoyment. If one is so constituted as not to be susceptible to those feelings which a reasonably well-balanced man is supposed to possess, and is so constituted as to obtain more pleasure out of needlessly annoying others than by securing and retaining their respect as a manly member of society, his sovereign right in his own property, to use it as he may so far as that use does not physically extend outside his boundaries to the detriment of others, may be so exercised as to violate the moral obligations which every member of society owes to his neighbors, without any penalty being visited upon him for his misconduct . . . .

*Metzger* and similar cases "are no longer fully accepted or applicable. They reflect factual circumstances and social priorities that are now obsolete." *Id.* at 235–36. The court further explained that "common law rules adapt to changing social values and conditions." *Id.* at 237–38.

■■

¶ 13.   Wisconsin has adopted the definition of private nuisance set forth in the RESTATEMENT (SECOND) OF TORTS (1979). *Vogel v. Grant-Lafayette Elec. Coop.*, 201 Wis. 2d 416, 423, 548 N.W.2d 829 (Ct. App. 1996). "The Restatement defines nuisance as 'a nontrespassory invasion of another's interest in the private use and enjoyment of land.'" *Id.* (citing RESTATEMENT (SECOND) § 821D). "The phrase 'interest in the private use and enjoyment of land' as used in sec. 821D is *broadly defined* to include *any* disturbance of the enjoyment of property." *Prah*, 108 Wis. 2d at 232 (emphasis added).[4] The RESTATEMENT explains:

> "Interest in use and enjoyment" also comprehends the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land. Freedom from discomfort and annoyance while using land is often as important to a person as freedom from physical interruption with his use or freedom from detrimental change in the physical condition of the land itself.

*Id.* (citing RESTATEMENT (SECOND) § 821D cmt. B at 101).

---

[4] The legislature has also provided a private nuisance definition in WIS. STAT. § 844.01, which was intended merely to adopt the common law. *See Shanak v. City of Waupaca*, 185 Wis. 2d 568, 596–97 518 N.W.2d 310 (Ct. App. 1994). As relevant here, the statute explains:   "Interference with an interest [in real property] is any activity other than physical injury which lessens the possibility of use or enjoyment of the interest." WIS. STAT. § 844.01(3).

170

¶ 14. To summarize, there are no per se exceptions to nuisance claims in Wisconsin; nuisance claims may arise from *any* disturbance of the enjoyment of property; and unsightly spite fences can constitute a private nuisance. *See id.* at 232, 235, 237. Thus, Price's argument, that nuisance claims can never be based on appearance, fails. In any event, while Price relied entirely on foreign case law, he filed no brief in reply to Huss's brief that relied on Wisconsin authority. Thus, he concedes the matter. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

¶ 15. Huss also argues that his nuisance claim did not rely solely on the retaining wall's appearance, because he testified in deposition and at trial that the wall blocked the view from his property; blocked sunlight; and caused water, mud and stones to unnecessarily come onto the property from the Price property. Thus, Huss argues, it would have been inappropriate to dismiss his claim on summary judgment or directed verdict, where the evidence must be viewed in his favor. Again, Price concedes this argument by failing to reply. *See id.*

¶ 16. Price next argues that Huss failed to plead a claim under the spite fence statute, WIS. STAT. § 844.10, and that the retaining wall did not satisfy the statutory definition.[5] Because this argument does not affect the

---

[5] WISCONSIN STAT. § 844.10 provides: "Any fence, hedge, or other structure in the nature of a fence unnecessarily exceeding 6 feet in height, maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance."

circuit court's determination—which we uphold—that the retaining wall constituted a nuisance under the common law, we need not also resolve whether § 844.10 provided an alternative basis for Huss's claim. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (appellate courts not required to address every issue raised when one issue is dispositive).

¶ 17. In any event, Wisconsin applies a liberal, notice pleading rule. *See Hertlein v. Huchthausen*, 133 Wis. 2d 67, 72, 393 N.W.2d 299 (Ct. App. 1986). A complaint need not identify legal claims; rather, it must set forth the basic facts giving rise to the claims. *See* WIS. STAT. § 802.02(1)(a). Price nonetheless asserts that Huss's complaint failed to meet special pleading requirements identified in WIS. STAT. § 844.16, which states: "The complaint shall indicate each plaintiff's interest [and] the nature of the alleged injury . . . ." We agree with Huss that this argument has no merit. To identify "the nature of the injury," a plaintiff must plead facts, not legal theories. Moreover, Price merely asserts that the complaint did not "meet the requirements of" § 844.16, without identifying which requirements were lacking or otherwise developing an argument regarding that statute. We need "not decide issues that are not, or inadequately, briefed." *State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994).

¶ 18. Finally, Price argues that the damages awarded to Huss were speculative. The court awarded $100,000 for loss in value of Huss's property, $6,000 for the cost of a berm and trees Huss placed to conceal the wall, and approximately $42,000 for fifteen months' additional carry costs attributed to delay in selling the property caused by the unsightly wall. In his argument, Price lays out those facts favorable to him concerning

damages, and asserts the court erred by relying primarily on one real estate agent's estimate for the $100,000 figure. Price emphasizes that the agent's loss valuation was only an estimate, or as Price frames it, a guess. Price's argument is unsupported by legal authority.

¶ 19.   Huss responds by setting forth the evidence supporting the circuit court's damages determination, as well as the evidentiary standard for determining damages, as specified in WIS JI—CIVIL 1700. We reject Price's argument because it lacks citation to legal authority, *see Flynn*, 190 Wis. 2d at 39 n.2, and because he concedes Huss's argument in response by failing to file a reply brief, *see Charolais*, 90 Wis. 2d at 109.

*By the Court.*—Judgment affirmed.