COURT OF APPEALS
DECISION
DATED AND FILED

September 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP1510**

**STATE OF WISCONSIN**

Cir. Ct. No.  2023CV2942

**IN COURT OF APPEALS
DISTRICT IV**

---

ALP BAYSAL, SANDRA ITALIANO, THOMAS MAXIM,
AND ROBERT PARK,

PLAINTIFFS-APPELLANTS,

V.

AMERICAN FAMILY LIFE INSURANCE COMPANY,
MIDVALE INDEMNITY COMPANY, AND
AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I.,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: NIA E. TRAMMELL, Judge. *Affirmed.*

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Alp Baysal, Sandra Italiano, Thomas Maxim, and Robert Park (collectively, the appellants) brought a class action against American Family Life Insurance Company, Midvale Indemnity Company, and American Family Mutual Insurance Company, S.I. (collectively, the insurers), alleging that the insurers disclosed the appellants' driver's license numbers to unauthorized individuals.  The circuit court dismissed the complaint on the basis that the appellants lack standing, and the appellants challenge the dismissal on appeal.  We affirm.

## BACKGROUND

¶2    The following facts are derived from the allegations in the complaint.

¶3    The insurers provided instant rate quotes for insurance policies as part of online application processes that shared the following feature.  Once basic identifying information—such as an individual's name, date of birth and address—was entered into the application, the insurers' internet platforms would automatically insert into the application that individual's driver's license number, which became visible on the platform.

¶4    In 2021, the insurers were notified of activity suggesting that unauthorized individuals, using an automated process, or "bot," had used the insurers' instant quote feature to obtain the driver's license numbers of numerous individuals, including the appellants.  The insurers notified the appellants that their driver's license numbers may have been obtained by unauthorized parties.

¶5 The appellants, who are not Wisconsin residents,[1] brought a class action against the insurers, alleging violations of the Drivers' Privacy Protection Act, 18 U.S.C. § 2724; negligence and negligence per se; violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 et seq.; and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., seeking declaratory and injunctive relief.[2] Relevant here, the appellants alleged that—as a result of the disclosure of the appellants' driver's license numbers through third-party misuse of the insurers' internet platforms— attempts to open various financial accounts were made in Maxim's and Park's names, that an attempt to make an unauthorized purchase was made in Maxim's

---

[1] Baysal and Maxim reside in New York, Italiano resides in North Carolina, and Park resides in California.

[2] Before filing this action, Baysal, Italiano, and Maxim originally filed suit against Midvale Indemnity Company ("Midvale") and American Family Mutual Insurance Company, S.I. ("AmFam Mutual") in federal court, alleging claims similar to the claims in this action based on the disclosure of their driver's license numbers to unauthorized individuals. *See Baysal v. Midvale Indem. Co.*, No. 21CV394, 2022 WL 1155295 (W.D. Wis. Apr. 19, 2022). The district court dismissed that action because it concluded that Baysal, Italiano, and Maxim did not have standing, *id.*, and the Seventh Circuit Court of Appeals affirmed on the same basis, *see Baysal v. Midvale Indemnity Co.*, 78 F.4th 976 (7th Cir. 2023), *reh'g denied*, No. 22-1892, 2023 WL 6144390 (7th Cir. Sept. 20, 2023).

In a separate action filed in federal court, Park sued Midvale and AmFam Mutual, also based on the unauthorized disclosure of his driver's license number. *See Park v. American Fam. Life Ins. Co.*, 608 F. Supp. 3d 755 (W.D. Wis. 2022). After the Seventh Circuit's decision in *Baysal*, 78 F.4th 976, Midvale and AmFam Mutual moved to dismiss Park's action, and Park voluntarily dismissed it. Although this information regarding what occurred in Park's federal action against Midvale and AmFam Mutual is not in the record of this appeal, we take judicial notice of records from PACER in the federal action (PACER is an acronym for Public Access to Court Electronic Records, which is a service of the federal judiciary). *See* WIS. STAT. § 902.01(2)(a), (3) (stating that a court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see also Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522 (stating that we may take judicial notice of records from Wisconsin's Consolidated Court Automation Programs).

name, and that fraudulent applications for unemployment insurance benefits in New York were made in Maxim's and Baysal's names.

¶6      The insurers moved to dismiss the complaint, arguing that the appellants lack standing.  The circuit court granted the insurers' motion, and this appeal follows.[3]

## DISCUSSION

¶7      "'Whether a party has standing is a question of law that we review independently.'"  ***Reetz v. Advocate Aurora Health, Inc.***, 2022 WI App 59, ¶7, 405 Wis. 2d 298, 983 N.W.2d 669 (quoting ***Friends of Black River Forest v. Kohler Co.***, 2022 WI 52, ¶10, 402 Wis. 2d 587, 977 N.W.2d 342).  When reviewing a motion to dismiss for lack of standing, we liberally construe the pleadings, and we accept as true "'[a]ll facts pleaded and all reasonable inferences from those facts.'"  ***Id.***, ¶6 (alteration in original) (quoting ***Scott v. Savers Prop. & Cas. Ins. Co.***, 2003 WI 60, ¶5, 262 Wis. 2d 127, 663 N.W.2d 715).

---

[3] The appellants frequently cite to the appendix that was submitted with their appellants' brief without including parallel citations to the appellate record that was compiled by the clerk of the circuit court.  We remind counsel that the appendix is not the record and that the rules of appellate procedure require parties to include appropriate citations to the record.  *See **United Rentals, Inc. v. City of Madison***, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322; WIS. STAT. RULE 809.19(1)(d)-(e).  Failure to follow this rule unnecessarily adds to the work of this high-volume court.

Separately, the insurers' brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs.  *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover").  As our supreme court explained when it amended the rule, the pagination requirement ensures that the numbers on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief.  S. CT. ORDER 20-07 cmt. at x1.

¶8 "[T]he standing of a party whose interest is challenged is determined by: (1) personal interest in the controversy; (2) injury or adverse effect; and (3) judicial policy that 'calls for protecting the interest of the party whose standing has been challenged.'" *Id.*, ¶7 (quoting *Foley-Ciccantelli v. Bishop's Grove Condo. Ass'n, Inc.*, 2011 WI 36, ¶5, 333 Wis. 2d 402, 797 N.W.2d 789). In applying these standards, we "consider[] federal case law as persuasive authority … because Wisconsin's standing analysis is conceptually similar to the federal analysis." *Id.*, ¶8 n.1; *see also* *Friends of Black River Forest*, 402 Wis. 2d 587, ¶17 ("Wisconsin has largely embraced federal standing requirements[.]").

¶9 "To establish standing in a data breach identity theft case, allegations of 'time spent dealing with fraud attempts, the threat of future identity theft, and money spent mitigating that threat … [are] sufficient to establish standing[.]'" *Reetz*, 405 Wis. 2d 298, ¶8 (alterations in original) (quoting *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 790 (W.D. Wis. 2019)). Relying on this language, the appellants argue that they have standing based on two different types of alleged harm.

¶10 The insurers argue to the contrary, relying primarily on *Baysal v. Midvale Indemnity Co.*, 78 F.4th 976 (7th Cir. 2023), *reh'g denied*, No. 22-1892, 2023 WL 6144390 (7th Cir. Sept. 20, 2023), a case addressing similar arguments from three of the four appellants here. The appellants have failed to file a reply brief responding to the insurers' arguments and do not sufficiently rebut the

insurers' arguments in their brief-in-chief.[4]  Accordingly, the appellants have conceded these arguments.  *See Apple Hill Farms Dev., LLP v. Price*, 2012 WI App 69, ¶14, 342 Wis. 2d 162, 816 N.W.2d 914 (treating the failure of an appellant to file a reply brief as a concession to a respondent's argument that was not rebutted by the appellant's opening brief).

¶11  We now briefly address the two types of alleged harm that the appellants argue confer standing and summarize the insurers' unrefuted arguments to the contrary.

¶12  First, the appellants argue that they have standing because they allege that fraudulent applications for unemployment benefits were filed in Baysal's and Maxim's names, which the appellants allege required Baysal and Maxim to spend time and money to deal with and to mitigate the attempted fraud, and which posed the risk of future fraud.  In response, the insurers point out that,

---

[4] In their brief-in-chief, the appellants argue that this court should not follow the Seventh Circuit's decision in *Baysal*.  Specifically, the appellants contend that Wisconsin's requirements for standing, as articulated in *Reetz*, are meaningfully different from the federal requirements.  But the insurers provide a supported argument that *Reetz* does not purport to offer a lower hurdle for standing in Wisconsin than is established in federal case law, and the appellants do not adequately refute that point.  Indeed, as previously noted, in *Reetz* we stated that we "consider[] federal case law as persuasive authority regarding standing questions because Wisconsin's standing analysis is conceptually similar to the federal analysis."  *Reetz*, 405 Wis. 2d 298, ¶8 n.1.  And consistent with this, we observe that the particular language from *Reetz* on which the appellants rely comes from federal case law.  *See id.*, ¶8 ("To establish standing in a data breach identity theft case, allegations of 'time spent dealing with fraud attempts, the threat of future identity theft, and money spent mitigating that threat ... [are] sufficient to establish standing[.]'" (alterations in original) (quoting *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 790 (W.D. Wis. 2019)).

The appellants further argue that *Baysal* should not be followed because it conflicts with some federal district court decisions.  However, as the insurers argue and the appellants do not refute, other federal district court decisions are consistent with *Baysal*, and in any event, the only federal appellate courts to address the issue—*Baysal* and *Greenstein v. Noblr Reciprocal Exch.*, No. 22-17023, 2024 WL 3886977 (9th Cir. Aug. 21, 2024)—reject the appellants' position.

although the appellants allege that fraudulent applications for unemployment benefits were filed in Baysal's and Maxim's names in New York, New York law requires an applicant to provide a social security number to apply for these benefits. *See* N.Y. Comp. Codes R. & Regs. Tit. 12, § 473.1(f) ("Each claimant shall furnish his/her Social Security account number as a condition of eligibility for benefits."). Accordingly, the insurers argue, because the appellants allege only that their driver's license numbers were disclosed and do not allege facts explaining how a driver's license number alone could facilitate the filing of a fraudulent claim for unemployment benefits in New York, the appellants fail to connect the disclosure of their driver's license numbers to the fraudulent applications. *See Baysal*, 78 F.4th at 978 (concluding that the alleged fraudulent applications for unemployment benefits did not confer standing in federal court because the appellants did not "contend that knowledge of a driver's-license number could facilitate such a bogus claim, or indeed that New York State asked for a claimant's driving information"); *see also Greenstein v. Noblr Reciprocal Exch.*, No. 22-17023, 2024 WL 3886977, at *3 (9th Cir. Aug. 21, 2024) (relying on the reasoning that we rely on here under substantively identical facts).

¶13 The insurers also argue that, because the appellants do not allege that the fraudulent applications for unemployment benefits made in Baysal's and Maxim's names were successful, they do not allege any injury resulting from the fraudulent applications. As the Seventh Circuit observed:

> A phony [unemployment insurance] claim could cause injury—having a fraud attributed to one's name could affect a credit rating or make it harder to obtain unemployment compensation following the real loss of a job. Plaintiffs do not contend, however, that either of these things happened to them.
>
>     ….

> … New York State may have suffered a concrete injury when it had to devote resources to finding and denying false claims …, but New York's loss does not supply a footing for plaintiffs' standing.

*Baysal*, 78 F.4th at 978.

¶14 Second, the appellants argue that fraudulent financial activity in Maxim's and Park's names is sufficient to establish standing. Specifically, the complaint alleges that a brokerage account was opened, and an unauthorized purchase made, in Maxim's name, and that unsuccessful applications were made to open a bank account and credit card in Park's name. The insurers respond that these allegations do not suffice to establish standing because the complaint does not allege that driver's license numbers were required for the opening of any of these financial accounts or for the unauthorized purchase. As the Seventh Circuit noted, "Social Security numbers can be used to open brokerage accounts, but drivers'-license numbers cannot. Likewise with credit cards[.]" *Id.* at 977.

¶15 The appellants argue in their brief-in-chief that their allegations connect the disclosure of their driver's license numbers to the fraudulent financial activity because they allege that hackers cross-referenced the data from the breaches and combined it with data from other sources to create so-called "fullz packages," which the appellants describe as "complete identity profile[s] or set[s] of information on an[] entity or individual." The insurers make two points that defeat this argument. First, the insurers note that the appellants provide no record citation for their assertion that they in fact allege that hackers combined the appellants' driver's license numbers with data from other sources to create "fullz

packages," and we do not discern this allegation anywhere in the complaint.[5] *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177 (explaining that issues not raised in the circuit court are forfeited, and supporting the proposition that appellate courts generally do not address forfeited issues)*; see also **Tam v. Luk**, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990) (we need not address arguments that are not supported by citations to the record). Second, the insurers note that if a driver's license number is not required for any of the alleged fraudulent financial activity, then the addition of an individual's driver's license number to a fullz package cannot be said to have resulted in any of the alleged harms.

¶16 In sum, we reject the appellants' arguments that they have standing based on their concession that the insurers' arguments to the contrary, which are supported by federal case law, are correct.[6]

## CONCLUSION

¶17 For the reasons stated above, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.

---

[5] Instead, in their complaint, the appellants only generally allege that hackers often combine data from multiple sources to create fullz packages.

[6] As stated, the appellants argue that they have standing based on allegations specific to Baysal, Maxim, and Park. In their appellants' brief, the appellants make no argument regarding standing that is specific to Italiano. And in their response brief, the insurers argue that the complaint fails to plead any harm suffered by Italiano that is sufficient to confer standing, a contention that the appellants do not refute.